(79 South. 651)

ROBERTSON BANKING CO. v. BRAS-
FIELD. (2 Div. 639.)

(Supreme Court of Alabama. March 23, 1918. Rehearing Denied May 9, 1918.)

1. BANKS AND BANKING ⟨⟩148(2)—CHECK TO
FICTITIOUS PERSON—FORGED INDORSEMENT.
Rule that bank paying depositor's check on forged indorsement is liable to him, unless payment was proximate result of his conduct or negligence, applies to check payable to fictitious person, unless it was so payable to drawer's knowledge, making it, under Code 1907, § 4966, subd. 3, payable to bearer.

2. PRINCIPAL AND AGENT ⟨⟩179(2)—IMPUT-
ED KNOWLEDGE — ACQUISITION BEFORE
AGENCY.
Plaintiff's check, made to fictitious person and paid by drawee bank on forged indorsement, was not so made to plaintiff's knowledge, rendering it, under Code 1907, § 4966, subd. 3, payable to bearer, on the theory of imputed knowledge of agent, even if K., who, to defraud plaintiff, applied to plaintiff for loan to such person and obtained the check, was plaintiff's agent; his knowledge being acquired before plaintiff authorized him to make the loan.

3. BANKS AND BANKING ⟨⟩148(2) — ACTS
MAKING INJURY POSSIBLE—PAYING CHECK
ON FORGED INDORSEMENT.
A bank, paying on forged indorsement a check payable to fictitious person, obtained from maker by fraud of person in whom he had confidence, was guilty of proximate negligence, rendering it liable, within rule as to which of two innocent persons shall suffer for act of third person.

4. BILLS AND NOTES ⟨⟩182—NEGOTIABLE IN-
STRUMENTS ACT—ADMISSION BY DRAWER.
Code 1907, § 5016, providing that drawer, by drawing instrument, admits existence of the payee and his capacity to indorse, does not make drawer, unknowingly making check to fictitious person, admit that any one other than named payee can properly indorse it.

McClellan, Gardner, and Thomas, JJ., dissenting.

Appeal from Law and Equity Court, Marengo County; Edward J. Gilder, Judge.

Action by J. S. Brasfield against the Robertson Banking Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Steiner, Crum & Weil and Horace Stringfellow, all of Montgomery, and Henry McDaniel, of Demopolis, for appellant. R. B. Evins, of Greensboro, for appellee.

ANDERSON, C. J. [1] It is settled law that a bank, which pays out the funds of a depositor on a forged check or indorsement, does so at its peril, and the depositor can recover the amount so paid, unless the bank can show that the payment was made as the proximate result of the conduct or negligence of the depositor; and this rule applies to a forged indorsement of a fictitious payee in the same way as it does to the forged indorsement of a real or existing payee. Michie on Banks, pp. 1095, 1096; Jordan-Marsh Co. v. Nat. Bank, 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; Armstrong v. Nat. Bank, 46 Ohio St. 512, 22 N. E. 866, 6 L. R. A. 625, 15 Am. St. Rep. 655; Shipman v. Bank of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; Chism v. Bank, 96 Tenn. 641, 36 S. W. 387, 32 L. R. A. 778, 54 Am. St. Rep. 863; Harmon v. Old Detroit Bank, 153 Mich. 73, 116 N. W. 617, 17 L. R. A. (N. S.) 514, 126 Am. St. Rep. 467; Hatton v. Holmes, 97 Cal. 208, 31 Pac. 1131; U. S. v. Nat. Bank, 205 Fed. 433, 123 C. C. A. 501; Vaglian Brothers v. Bank of England, 23 Q. B. D. 243.

[2] While this rule is not seriously questioned by the appellant bank, it is contended that the check in question was payable to bearer under the negotiable instruments law, as declared in subdivision 3 of section 4966 of the Code of 1907, which provides that the instrument is payable to bearer "when it is payable to the order of a fictitious or non-existing person, *and such fact was known to the person making it so payable*" (italics supplied). It is undisputed that the check in question was made payable to a fictitious person; but, in order for the defendant to have treated it as payable to bearer, the

burden was upon it to show that Brasfield, the drawer, knew that Johnson, the payee, was a nonexisting person. Boles v. Harding, 201 Mass. 103, 87 N. E. 481 and cases supra. There is no pretense that Brasfield knew, at the time of drawing the check, that the payee was a fictitious person, and intended to make the same payable to a nonexisting person; but it is contended that he had constructive notice of this fact, because Kirven was his agent in negotiating the loan for Johnson, and knew of the nonexistence of Johnson, the payee, and that this knowledge by Kirven was imputable to his principal, Brasfield. It may be doubted whether or not Kirven was such an agent of Brasfield as to make him chargeable with notice to Kirven, who started in to perpetrate a fraud upon Brasfield, and whether or not he would, in this respect, be acting within the scope of his agency, if such a relationship existed.

But we may concede, for the purpose of deciding this case, that Kirven was Brasfield's agent, and that he would be chargeable with notice to Kirven, if acquired by him during the agency and while acting within the line of his authority. Yet, under the well-established law of this state, Brasfield was not bound by notice or knowledge acquired by Kirven before he became the former's agent. Marshall v. Lister, 195 Ala. 591, 71 South. 411. "Knowledge acquired by an agent prior to his agency, or in regard to matters outside the line of his duty, or while pursuing his own or some other person's business, is not notice to his principal of such fact or facts, and is not binding upon him." 7 Mayf. Dig. 740, and cases there cited. "It was early settled in this state, and has been since followed, that notice or knowledge by an attorney, to carry home constructive notice to the client, must be shown to have been given or acquired after the relation of attorney and client was formed." McCormick v. Joseph and Anderson, 83 Ala. 401, 3 South. 796. Kirven knew of the nonexistence of Johnson long before Brasfield authorized him to make a loan, and did not ascertain this fact after the relation of lawyer and client, or principal and agent, was formed. Therefore the check in question was not payable to bearer, so as to relieve the defendant bank from ascertaining the identity of the payee and the genuineness of his indorsement before paying the check; and, failing to perform this legally required duty, its neglect in this respect was the direct and proximate cause of the loss or injury.

[3] It is also contended, even though this court should determine that the check was not payable to bearer, that Brasfield, though innocent, furnished the means whereby the loss was sustained, and that, when one of two must suffer through the conduct of a third party, he who enabled the party to commit the act must bear the consequences. This just doctrine is not questioned, but does not apply when one is more culpable than the other, or where the injury could have been avoided by the ordinary diligence and prudence of the one, notwithstanding the other party furnished the means, which may have been the remote, though not direct, proximate, cause of the injury. Here we have a case in which Brasfield misplaced confidence in Kirven, who had started out to perpetrate a fraud, and issued a check which, as above demonstrated, was not payable to bearer, and which could have been only transferred by the genuine indorsement of the payee. Sections 4985 and 4980, Code 1907. When the instrument is not payable to bearer, but to a named person, it is the duty of the drawee bank, or one who buys the same, to procure a genuine indorsement; and the fact that the forged indorsement is the name of a nonexisting person does not afford relief against a noncompliance with its plain legal duty, and one who neglects this duty in paying out the funds of its depositors is guilty of proximate negligence. As was well said in the case of Jordan-Marsh v. Nat. Bank, supra:

"The question arises whether the making of a check payable to a fictitious or nonexisting person, through negligent failure to discover the fraud by which the check is obtained, stands differently from making a check to an actual person, in reference to its effect upon payment by the defendant. We are of opinion that there is no difference in law. In either case, it is the duty of the bank to see that there is a genuine indorsement. In some respects it would be more difficult to deceive a bank in this particular, as against vigilant investigation, if the payee was fictitious, than if he was real. In some respects it might be less difficult. We know of no decision that has recognized a difference in law between the two cases. It has been held that there is no difference. Armstrong v. National Bank, 46 Ohio St. 512 [22 N. E. 866, 6 L. R. A. 625, 15 Am. St. Rep. 655]."

Again, in the language of Minshall, C. J., speaking for the Ohio court in the Armstrong Case, supra:

"It is a saying frequently repeated, in The Doctor and Student, that 'he who loveth peril shall perish in it.' In other words, where a person has a safe way, and abandons it for one of uncertainty, he can blame no one but himself if he meets with misfortune."

Here the discharge of a plain legal duty upon the part of the paying bank would have inevitably led to the fact that the indorsement was a forgery and averted the injury, regardless of Brasfield's misplaced confidence in Kirven and the betrayal of the same by said Kirven.

[4] Suggestion is made that section 5016 of the Code of 1907, among other things, provides that:

"The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse, and engages that on due presentment the instrument will be accepted or paid."

How this section harmonizes with subdivision 3 of section 4966, unless it applies to all instruments other than those payable to bearer, we are not called upon to decide; for, as above stated, the check in question was not payable to bearer, and if section 5016

makes Brasfield admit the existence of the payee, Johnson, and his capacity to indorse the check, this would but strengthen the reason and necessity of obtaining a genuine indorsement before paying the check. The section does not make Brasfield admit that any one other than his named payee could properly and legally indorse the check.

The case of Kohn v. Watkins, 26 Kan. 691, 40 Am. Rep. 336, comes nearer supporting the appellant's contention than any case we have found; but it is not in line with the authorities supra, and finds little or no support in other cases. In the first place, this case follows Mr. Daniel (section 139), to the effect that the check is payable to bearer if payable to a fictitious person, whether the drawer knew it or not, and which is not only contrary to the general rule of courts and text-writers, but to the negotiable instruments law (section 4966 of the Code); and if said instrument was payable to bearer, as there held, of course, the drawer was responsible for putting such an instrument in circulation and permitting it to fall in the hands of an innocent purchaser, who could acquire title by delivery. But under the well-considered authorities, as well as our statute, it was not payable to bearer unless the drawer knew that the payee was a nonexisting person. Indeed, this case is well criticized by the Tennessee court in the case of Chism v. First Nat. Bank, 96 Tenn. 641, 36 S. W. 387, 32 L. R. A. 778, 54 Am. St. Rep. 863.

The case of Snyder v. Corn Ex. Nat. Bank, 221 Pa, 599, 70 Atl. 876, 128 Am. St. Rep. 780, is in line with the holding that the drawer must know that the payee is a fictitious or nonexisting person, in order that the check shall be deemed payable to bearer; but the court held in that case that it was payable to bearer for the reason that Greenfield, the agent, had notice of the fact which was chargeable to Snyder, the drawer, for the reason that said agent, Greenfield, had full authority under a power of attorney to draw checks in behalf of the plaintiff Snyder, and he knew of the nonexistence of the payee at the time and did not ascertain the fact before the relationship was formed. In the case of Equitable Co. v. Nat. Bank (St. Louis Court of Appeals) 181 S. W. 1176, the court imputed notice to the insurance company of the nonexistence of the payee of the check and the policy, because Davis, the agent, discovered the fact while the company's agent and while acting in the line of his employment, but did not charge the company with notice as to a fact known to Davis before he became such agent.

The case of First Nat. Bank v. Allen, 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80, is not in conflict with the foregoing views. The court did not there charge Allen with notice as to a fact known to or discovered by the agent, Tomlin, before he became Allen's agent. The opinion held that Allen was in no way responsible for the forgeries committed by his agent, Tomlin, or for the collection and circulation by him of forged checks, but did invoke an estoppel against Allen as against recovering for certain checks which the bank paid after it had sent in the passbook and previously forged checks, upon the idea that, if Allen had previously gone over his account and checks, he would have discovered the forgeries in time to have prevented the payment of subsequently forged checks. It was also the duty of Tomlin, the agent, to go through the checks and examine the account; and the court held that, as this was within the scope of his employment, his negligence in failing to discover the forgeries was imputable to his principal, Allen. The court did not hold, however, that, because Tomlin knew that these forgeries were going on, Allen was chargeable with this notice, notwithstanding the agent did not communicate it to him, or that Allen was chargeable with notice acquired by Tomlin before he became his agent. The real holding in said case was that the negligence of Tomlin, while acting within the line and scope of his employment, in failing to detect the forgeries by an examination of the bank book and returned checks, was chargeable to the principal, Allen. As a matter of fact, Tomlin was the man committing the forgeries, and knew better than any one else that they were going on; but the court did not impute this knowledge to Allen simply because Tomlin was his agent, but only charged him with the neglect of his agent while acting in the scope of his employment.

The case of Hall v. Haley, 174 Ala. 190, 56 South. 726, L. R. A. 1918B, 924, is not opposed to the views above expressed, but is a strong supporter of same. As was said in that case, Somerville, J., speaking for the court:

"By a long line of decisions this court is thoroughly committed to the rule that knowledge acquired by an agent prior to his agency, or in regard to matters outside the line of his duty, or while pursuing his own or some other person's business, is not notice to his principal of such fact or facts, and is not binding upon him."

Again, it was said (174 Ala. on page 201, 56 South. 730, L. R. A. 1918B, 924) after qualifying or overruling the Lea Case, 147 Ala. 421, 42 South. 415, 8 L. R. A. (N. S.) 279, 119 Am. St. Rep. 93, which extended the doctrine as to previously acquired notice:

"But there is a long line of decisions in this state which adopt the rule that notice to an agent, to bind his principal, must have been acquired by the agent during his employment; i. e., while he is actually engaged in the prosecution of his duties as agent, and not at a time antecedent to the period of his agency."

The judgment of the law and equity court is affirmed.

Affirmed.

SOMERVILLE, J., concurs in the opinion and, conclusion. MAYFIELD and SAYRE, JJ., concur in the conclusion, and will express their views in another opinion. McCLELLAN, GARDNER, and THOMAS, JJ., dissent.

MAYFIELD, J. (concurring). The doctrine is thoroughly established, and it has been repeatedly held in this state, that where a person who desires to borrow money applies to an attorney or a money broker to procure a loan for him, and pays or agrees to pay such attorney or broker anything for his services, this constitutes the attorney or broker quoad hoc the agent of the borrower, and not of the lender, though it be a part of the business of the attorney or broker to lend money, and he has, on other occasions, lent moneys of the lender, and so, even where the lender has placed his money in the hands of the broker to be so lent. American Mortgage Co. v. King, 105 Ala. 358, 16 South. 889; Edinburgh, etc., Co. v. Peoples, 102 Ala. 241, 14 South. 656; Ginn v. New England, etc., Co., 92 Ala. 135, 8 South. 388; Allen v. McCullough, 99 Ala. 612, 12 South. 810; George v. New England, etc., Co., 109 Ala. 548, 20 South. 331; Land Mortgage, etc., Co. v. Preston, 119 Ala. 290, 24 South. 707.

A well-established exception to the general rule that a principal is chargeable with constructive notice of facts known to the agent, or of which he has notice, is that if the agent in the particular matter is then in fact acting for himself, and intends to perpetrate a fraud on the principal, or on other persons, for his own benefit, and the communication of the fact to be imputed would necessarily prevent the consummation of the fraud intended, then the principal is not chargeable with constructive notice. Frenkel v. Hudson, 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736; Reid v. Bank, 70 Ala. 199; Innerarity v. Bank, 139 Mass. 332, 1 N. E. 282, 52 Am. Rep. 710; Dillaway v. Butler, 135 Mass. 479; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698; Allen v. South Boston R. R. Co., 150 Mass. 200, 22 N. E. 917, 15 Am. St. Rep. 185. In the last-cited case the reason for the rule is thus stated:

"There is an exception to this rule when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act. It is sometimes said that it cannot be presumed that an agent will communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal, and that the doctrine of imputed knowledge rests upon a presumption that an agent will communicate to his principal whatever he knows concerning the business he is engaged in transacting as agent. It may be doubted whether the rule and the exception rest on any such reasons. It has been suggested that the true reason for the exception is that an independent fraud, committed by an agent on his own account, is beyond the scope of his employment, and therefore knowledge of it, as matter of law, cannot be imputed to the prin-

cipal, and the principal cannot be held responsible for it. On this view, such a fraud bears some analogy to a tort willfully committed by a servant for his own purposes, and not as a means of performing the business intrusted to him by his master. Whatever the reason may be, the exception is well established."

The case nearest in point and the best reasoned case is from the Georgia court; the opinion being written by Justice Lamar, late of the Supreme Court of the United States. The headnotes well state the decision, which is as follows:

"1. Where an agent is guilty of an independent fraud for his own benefit, and to communicate the same would prevent the accomplishment of his fraudulent design, the principal is not charged with notice of such misconduct.

"2. A. could read and write, but was inexperienced in business. B. had been her attorney, and she owed him $50. At his request, and to enable him to raise the money, A. agreed to give a note therefor. The agent fraudulently made a note for $500, instead of $50, and procured her to sign it. The note was made payable to X., who had money to lend and who was a client of B. The money was advanced on the note to B., but none was paid over by him to A. Held, that the lender was not charged with notice of the agent's fraud." Pursley v. Stahley, 122 Ga. 362, 50 S. E. 139.

This decision was approved by Mr. Mechem in his work on Agency. See volume 2, § 1838, and notes.

A lender can never be chargeable with notice of the fraud, or with the fraud, of one with whom he agrees to lend money to a third party, under the facts and circumstances shown by this record. The law as to commercial paper in such cases must control and fix liability; there is no question of agency. The lender being guilty of no fault or negligence in the making or delivering of the check, he cannot be held liable if the bank pays it to a person not entitled to receive it.

While I concur in the opinion of the Chief Justice, I do not concede that the relation of principal and agent existed, and am of the opinion that the decision should be rested on this ground.

Mr. Justice SAYRE concurs in this opinion.

SOMERVILLE, J. I concur in the opinions filed by the Chief Justice and by Justice MAYFIELD. I think the record shows that Kirven was not acting as the agent of Brasfield in making a loan, but solely and exclusively for himself in the perpetration of an independent fraud. It is true that knowledge acquired by an agent prior to, or outside of, his service as agent, if present in his mind while acting as agent, is prima facie (but not conclusively) presumed to have been communicated by him to his principal. This, however, is a mere rule of evidence, and is wholly distinct from the rule which conclusively charges the principal with constructive knowledge of all pertinent information acquired by the agent while actually acting as agent. This distinction was discussed at length by the writer in

the case of Hall Co. v. Haley Co., 174 Ala. 190, 56 South. 726, L. R. A. 1918B, 924.

If it be conceded, for the argument, that Kirven was Brasfield's agent in such sense as was discussed in that case, I think the facts here shown would forbid the application of the rule of constructive knowledge as applied in that case, and in First National Bank v. Allen, 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80. On the contrary it would be merely a question of the actual knowledge of Brasfield of the nonexistence of Johnson, which, though prima facie presumed (Hall Co. v. Haley Co., supra), is fully rebutted by the testimony of Brasfield, aided by the consideration that Kirven could not have informed him of Johnson's nonexistence without denouncing his own fraud and defeating his entire design.

I do not think the cases above referred to are opposed to the conclusions stated in the opinion of the Chief Justice. With respect to the Allen Case, it is necessary to observe that the knowledge imputed to Allen was not the fraudulent conduct of his agent, Tomlin, in forging the checks, though he was then in Allen's service, but only the knowledge of those forgeries necessarily acquired by Tomlin while afterwards discharging for Allen the latter's duty of inspecting his canceled checks — a distinction which, in my opinion, excludes its application to the instant case.

McCLELLAN, J. (dissenting). This action is by a depositor (plaintiff appellee) against the bank (defendant appellant) to recover $2,500 paid out by the bank on a check drawn by the depositor in favor of "D. W. Johnson" as payee and charged to the account of the depositor. The trial court gave judgment for the plaintiff. In my opinion, this judgment is laid in error.

The evidence requires, indubitably, the acceptance of these conclusions: (a) That one Kirven (since deceased) applied to the plaintiff for a loan to "D. W. Johnson"; (b) that there was no such person as D. W. Johnson, a fact necessarily known to Kirven, but unknown to the plaintiff; (c) that plaintiff agreed to make the loan to D. W. Johnson whom the plaintiff himself then thought to be an existing person, to be secured by a mortgage on real estate Kirven represented as being owned by D. W. Johnson, in Marengo county, where both plaintiff and Kirven resided; (d) that plaintiff had full confidence in Kirven, actually, avowedly, accepting and acting on Kirven's judgment alone of the value of the security and of the soundness of D. W. Johnson's title thereto; (e) that upon the receipt of the notes and mortgage, purporting to be signed by D. W. Johnson, plaintiff sent the check in question to Kirven for delivery to the payee, D. W. Johnson; (f) that Kirven received the check, indorsed it in the name of "D. W. Johnson," and forwarded the check thus indorsed to the First National Bank of Montgomery, with the object and result of opening therewith an account for "D. W. Johnson," and subsequently checked out the whole amount by signing the name of "D. W. Johnson"; and (g) that some months afterwards the plaintiff discovered there was no such person as "D. W. Johnson," and demanded reimbursement by the defendant bank, which the defendant bank declined to make.

The trial below having proceeded without any reference to the possible question of estoppel against the plaintiff's right to recover, within the doctrine applied in Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811, no consideration has been given that possible inquiry.

The plaintiff admitted signing the check in question, and also that he sent this check to Kirven for delivery by him to D. W. Johnson, named as payee therein. The plaintiff further testified that Kirven had made "several loans" for him; "that he had known him (Kirven) for years, and that Kirven had made some loans, not many, for him during that time; that Kirven told him that this man Johnson owned this land, and that the title was good, and Kirven fixed up the papers, *and, relying on this,* he made the loan; * * * that Kirven was one of the promptest men he had ever had any dealings with in his life, *and that previous to this he had represented plaintiff in several loans* and plaintiff thought him all right" (italics supplied). No evidence to a different effect was offered. The evidence of the plaintiff himself is conclusive of the fact that plaintiff intended to constitute Kirven his agent to effect this loan, to represent him in this as in other previous loans, and that he gave Kirven the fullest confidence, as respected Kirven's integrity and his judgment as a lawyer competent to appraise the value of securities for loans and to pass upon the validity of titles to the property. The plaintiff's confidence was egregiously misplaced and abused. Kirven, in furtherance of his fraudulent design, indorsed the check in the fictitious name of its payee, effected the payment of the check, and appropriated the money. Under the circumstances disclosed by the record, to permit the plaintiff to recover the amount so paid out and charged to plaintiff's account is to sanction and effectuate a grave injustice. The plaintiff, the drawer of the check, should bear the loss. There is no intimation, or suggestion, that either the defendant bank or the Montgomery bank participated in or had the slightest notice or knowledge of Kirven's fraudulent design or his acts in accomplishing it.

There are, in my opinion, several reasons why the loss thus occasioned should be left to be borne by the plaintiff, drawer of the check in question.

1. It may be assumed, for the occasion

only, that the plaintiff himself was free from personal fault in uttering the check, later paid by the drawee, the defendant. This court has repeatedly announced the principle that, when one of two innocent persons must suffer from a loss by the tortious act of a third person, he who enabled the third person to occasion the loss should bear it. Young v. Lehman, 63 Ala. 519, 524; Allen v. Maury, 66 Ala. 10, 19; Reynolds v. Reynolds, 190 Ala. 468, 67 South. 293; Noble v. Moses, 74 Ala. 604; 16 Cyc. 773; 10 R. C. L. 695. Even the limitation upon this principle defined in the cited text in Cyc. and by Judge Christiancy in Holmes v. Trumper, 22 Mich. 427, 7 Am. Rep. 661, when considering the wrongful interpolation made by the payee in a promissory note after its delivery, is inapplicable here, for the reason, among others, that Kirven bore a relation of confidence, avowed by the plaintiff himself, to the plaintiff in the process of making this loan for the plaintiff, and especially under the commission the plaintiff gave Kirven to deliver the check, which the plaintiff sent to Kirven for the purpose. The sound morality and justice of applying the stated doctrine of estoppel to this plaintiff is thus set forth, in a like case, in Marcus v. Bank, 57 Pa. Super. Ct. 345, 350, 351:

"It is conceded that the payees named in the checks did not exist; the checks were drawn by the maker payable to imaginary persons. The plaintiff, having confidence in Moskovitz, accepted his statements that the transactions were loans to the persons named, and handed the checks to Moskovitz to be delivered to the supposed borrowers. The whole transaction was between the plaintiff and Moskovitz, so far as the pretended lending of money and the payment by the plaintiff to the borrowers were concerned. The effect of the drawing of the checks on the bank was an implied representation by the drawer that the payees were existing persons, and yet there could not be a genuine indorsement of such papers. It is not reasonable to charge the bank with the consequences of the payment of a forged indorsement, when the plaintiff put in circulation checks which were not susceptible of a genuine indorsement. The case is one for the application of the rule that, as between two innocent parties, he who by his acting makes loss possible must bear it. That the plaintiff was overconfident, and that he was cheated by Moskovitz, whom he was befriending, is very evident; but we are not persuaded that there is substantial ground for shifting the result of his credulity to the bank, which was in no way responsible for the putting of the checks in circulation."

But it is urged that the bank, in paying the check on the false indorsement of the nonexisting "D. W. Johnson," was not one of two innocent persons, within the stated principle of estoppel. Since the check was confessedly signed by the plaintiff, was fair upon its face, the fault to be attributed to the bank is that the bank was negligent in not exercising—as a primary, affirmative duty, before paying the check—proper diligence, or at least some diligence, to ascertain whether the indorsement was genuine, notwithstanding there was no fact, nor the slightest circumstance relating to the check,

or to the transaction of which it was a part, suggesting or indicating in any degree the fact that the drawer had, innocently or otherwise, made the check payable to a nonexisting person, from whom, of course, no genuine indorsement could ever come. There are, in the writer's judgment, two sound objections to the acceptance of this proposition:

First. The manifest effect of the provisions of section 61 of the Uniform Negotiable Instruments Act (Code Ala. § 5016) is to conclusively impute to the drawer of a negotiable instrument the admission that the payee exists and that the payee then has capacity to indorse. So far as presently important, that section reads:

"The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse. * * * "

The ordinary check is a negotiable instrument. Uniform Neg. Instr. Act, § 185; same section Code Ala. § 5132; Uniform Neg. Instr. Act, § 189; Code Ala. § 5136; Uniform Neg. Instr. Act, § 1; Code Ala. § 4958; Crawford's Anno. Neg. Instr. Law, pp. 176, 177; Boswell v. Bank, 123 Ky. 485, 96 S. W. 797. The check uttered, sent forth by this plaintiff, was a negotiable instrument. Authorities supra. When this check, confessedly executed and uttered by the plaintiff, was presented to the First National Bank of Montgomery or to the drawee, the defendant, it was impressed by the quoted statute (section 61, Uniform Neg. Instr. Act) with the admission, imputed to the drawer by positive law, that its payee was an existing person who then had the capacity to indorse it, and upon this admission the bank had the right, under the law, to rely. If this widely adopted statute means anything, it means what it says. This act was submitted to the lawmakers of the country as a complete proposal. It was previously carefully considered, was conformed to express the best of the nationally drawn thought on the subject, and has been generally adopted with the particular view of affording a uniform statutory status in respect to its very important subject-matter. The bank having the right to rely upon the admission the positive law imputed to this drawer (plaintiff), no negligence or other breach of duty should be attributed to the bank in failing to exercise diligence, care, or to institute inquiry, to ascertain that the payee named in the check, and uttered by the drawer himself, was a nonexisting person. To attribute negligence to the bank in such circumstances annuls the quoted provisions of section 61 of the Uniform Negotiable Instruments Act.

In Hill v. McCrow (Or.) 170 Pac. 306, 309, the Supreme Court of Oregon read section 60 of the Uniform Negotiable Instruments Act—a section relating to the liability of makers, while section 61 relates to the draw-

ers—according to its terms when that court said:

"By the very act of engaging to pay to a particular payee, he [i. e., maker] acknowledges his capacity to receive the money, and also his capacity to order it to be paid to another. Section 5893, L. O. L."

According to the provisions of section 61 of the act, the drawer of the check said to the banks:

"When I uttered this check the payee named therein was an existing person and then had the capacity to indorse it."

To permit the drawer to assert to the contrary, after the thus issued check has induced the wholly unwarned banks to part with money on the faith of the check, is, it seems to me, the extension to the drawer of a legal bounty and an undeserved immunity, in immediate opposition to the terms of section 61 of the act. Manifestly no answer to these considerations is afforded by referring, as the majority opinion suggests, to the provisions of section 9 of the Uniform Negotiable Instruments Act (Code Ala. § 4966), wherein it is provided that an instrument is payable to bearer "when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable." There is no inharmony between the two sections. The one simply defines an instrument payable to bearer; the other imposes upon the drawer, as a legal result, an unequivocal admission, aside from the obligation that consists with natural, necessary implications from the acts of the drawer. The object of both sections is to give faith, credit, and security to negotiable instruments that are introduced by the drawer or maker into commercial channels, and to this end to fairly, reasonably restrict the opportunity makers and drawers might seek or avail of to avert a just liability consequent upon the issuance of such instruments. Both of these sections operate against the makers or drawers of negotiable instruments, and in favor of those who honor them.

It is certain that neither those who with commendable care constructed the Uniform Negotiable Instruments Act nor the lawmaking bodies that have since adopted it had any idea that sections 9 and 61 (Code Ala. §§ 4966, 5016) were inharmonious, much less that the undesignated one of them was rendered ineffectual by the unindicated other of them.

Second. The other reason against the acceptance of the proposition that the bank should be held derelict or negligent in the premises is that to so affirm involves the unjustified · imposition upon the bank of the primary duty to exert a protecting care to save the drawer from a loss to which the drawer's own misplaced confidence, in one serving his interest, has subjected him; a confidence that in this instance was avowedly repeatedly reposed in Kirven for the purpose of advancing the drawer's pecuniary interest; a confidence that was unlimited, even to the extent of unreservedly accepting Kirven's representation as to the borrower, the value, and the title to the security for the loan, and, finally, of committing to Kirven the delivery of the check to the mythical person the thus fully trusted Kirven caused the drawer to name as payee therein. The drawer of the check should not be reimbursed for a loss immediately consequent upon his misplaced confidence, and the drawee bank pronounced negligent in honoring the check, unless the doctrine is accepted that banks are constituted the guardians of the drawers of checks to protect them from the consequences of their own misplaced confidence in those who represent them. Such ought not to be, and is not, as I read the authorities, the obligation or duty of the banks.

2. Independently of the above-stated considerations, this check was payable to bearer, within the purview of subdivision 3 of section 9 of the Uniform Negotiable Instruments Act (same section, Code Ala. § 4966), quoted before in this opinion. If so, under familiar principles, the banks were justified in paying the check on the indorsement by whomsoever made. Beyond all doubt the only evidence on the subject (that of the plaintiff himself, the substance of which has been quoted ante) establishes Kirven's agency for plaintiff in respect of this loan, including the mission to deliver the check to the ostensible borrower, D. W. Johnson. Agency is a matter of contract; and, if not required to be in writing, its existence may be proven by evidence of pertinent facts and circumstances conducing to the establishment of that conclusion. 1 Mechem on Agency, § 300; Merriam v. Haas, 154 U. S. 542, 14 Sup. Ct. 1159, 18 L. Ed. 29; State v. Bristol Bank, 108 Ala. 3, 7, 8, 18 South. 533, 54 Am. St. Rep. 141. The distinguishing features of agency are representative character and derivative authority. 1 Mechem, § 26. According to the discriminatory description of "broker" and "agent," approved in Stratford v. City Council, 110 Ala. 619, 625, 20 South. 127, Kirven was not in this instance, a "broker" or a "loan broker." That there was in fact no such person as "D. W. Johnson" is not a factor in determining in this action by the drawer against the drawee of the check, the principal's (the plaintiff's) intent to constitute Kirven his agent in the premises. Since Kirven was the plaintiff's agent to promote and effect the loan and to particularly guard the plaintiff's interests therein, the knowledge Kirven actually had that "D. W. Johnson" was not an existing person is imputable to the principal, the plaintiff. In our recent deliverance on this subject, Hall Co. v. Haley Co., 174 Ala. 190, 202, 56 South. 726, 730 (L. R. A. 1918B, 924), expressly reaffirming Bank v. Allen, 100 Ala. 476, 483, et seq., 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80, wherein an important feature of the ruling, relating to imputed knowledge, made in Shipman v. Bank, 126 N.

Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821, was not accepted, this court deliberately declared:

"Constructive notice to the principal through the actual knowledge of the agent is not a rule of evidence, but one of substantive law. Given notice to or knowledge of the agent, received while so acting, and the principal is conclusively bound by it; not because he ever knows it in fact, because his actual knowledge is utterly immaterial, but because as to the thing the agent is doing the agent is in law the principal, and the principal is in law the agent. Their legal identity is complete. Nor can it matter, in this aspect of the rule, whether the agent has or has not, private reasons or interests which make it unlikely or even certain that he will not inform his principal, as correctly ruled in First Nat. Bank v. Allen, 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80."

No occasion or necessity to now repudiate that pronouncement is made to appear. The agent's (Kirven's) knowledge that "D. W. Johnson" was a nonexisting person was acquired, not only before the check was issued, but through the very process of discharging the agency, including the representations he made to his principal in and about the subject of his agency and the acts he did in his principal's behalf, as well as through his commission by the principal to deliver the check to "D. W. Johnson," he necessarily knew that the payee was a fictitious person. The fact that Kirven, previous to his agency, knew there was no such person as D. W. Johnson, did not neutralize the further important fact that in the very act of discharging the commission the principal (the plaintiff) gave him, he knew of the nonexistence of the pretended borrower. In view of undisputed evidence in the record, it is not possible to accord effect or application to the doctrine that discriminates between an agent's previous knowledge of a fact pertinent to his agency and knowledge acquired by the agent in the process of effecting the object of the agency.

It is insisted that the knowledge of an agent should not be imputed to his principal, if. the knowledge of the fact thus imputed would involve the assumption that the agent would advise the principal of the agent's perpetration of or connection with a crime or other infidelity in respect of the subject of the agency. In Bank v. Allen, 100 Ala. 476, 483–485, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80, decided 25 years ago, it was pointedly held, in a case where the agent was a forger, as the quotation ante from Hall Co. v. Haley Co., supra, discloses, that even the certainty that the agent would not advise his principal of the agent's own crime or dereliction would not avail to avert the imputation to the principal of the agent's knowledge. The quoted doctrine of the Allen and Hall-Haley Cases, supra, should, in my opinion, be either renounced as unsound or applied to the case at bar. I see no sufficient reason to now repudiate a doctrine so long recognized in this jurisdiction. The doctrine of these texts and decisions supports the conclusion that this check was payable to bearer, and, in consequence, the plaintiff should not recover. 2 Michie on Banks & Banking, § 138; Code, § 4966; Kohn v. Watkins, 26 Kan. 691, 40 Am. Rep. 336; Equitable Assur. Soc. v. Nat. Bank of Com. (Mo. App.) 181 S. W. 1176; Marcus v. Bank, 57 Pa. Super. Ct. 346. See Emporia Bank v. Shotwell, 35 Kan. 360, 11 Pac. 141, 57 Am. Rep. 171, 175; Snyder v. Corn Exch. Bank, 221 Pa. 599, 70 Atl. 876, 128 Am. St. Rep. 780.

It would unduly extend this opinion to comment upon the many decisions bearing on this question. Discriminative annotators have made exhaustive contributions to the learning on the subject in these, among other, books: 22 L. R. A. (N. S.) 499 et seq.; 50 L. R. A. 75 et seq.; 34 L. R. A. (N. S.) 1101 et seq.; 54 Am. St. Rep. 869. When the decisions and texts upon which the majority of the court rest their conclusion are considered in the light of the differentiating facts and circumstances presented here and in them, the error of according such texts and decisions a controlling influence in casting the court's judgment in favor of this plaintiff's right to recover will appear. In addition to the discriminating fact that here the drawer's name to the check was not forged, the texts and decisions cited by the majority of this court show that appropiate effect and influence was not accorded (a) the relation of confidence existing between the drawer and the guilty agent; (b) the rule of primary injustice illustrated in the case of Marcus v. Bank, quoted ante; and (c) the preservative, protective right conferred on the banks by the provisions of section 61 of the Uniform Negotiable Instruments Act, quoted above. The visitation upon the bank, the drawee, of the obligation and burden to bear the risk of loss that the drawer's act, and his confidence in his own agent, enhanced by uttering a check that never could receive a genuine indorsement, seems to me to be obviously unfair; there being, manifestly, a wide difference between a case where a genuine indorsement may be required and a case where no genuine indorsement can ever be given. In the one instance, the former, the banker may reasonably, justly rely upon the restraint, and consequent protection, the penal laws exert upon a particular existing person, named as payee; while in the other, the latter, no such protection is afforded the banker, because there is no particular existing person upon whom such penal laws may operate to restrain criminal conduct.

Shipman v. Bank is grounded on the theory that there no relation of agency existed between the plaintiff and the perpetrator of the fraud. Indeed, the court expressly held that the perpetrator was not, in any sense or degree, the agent of the plaintiff. It is alone through that interpretation of Shipman v. Bank that it may be reconciled with the later deliverance, by the same court, in Phillips v. Bank, 140 N. Y. 556, 35 N. E. 982, 23 L. R.

A. 584, 37 Am. St. Rep. 596, wherein the judicial process of interpreting the Shipman Case, and, at the same time, of deciding the Phillips Case, the court, in effect, materially modified broad statements to be found in the opinion in the Shipman Case.

In my opinion, the judgment below should be reversed.

GARDNER and THOMAS, JJ., concur in this dissent.