The late Justice SNOW and Justice STEERE took no part in this decision.

---

PEOPLES STATE BANK *v.* TROMBLY.

1. PLEADING — ADMISSIONS — EVIDENCE — PLAINTIFF RELIEVED FROM ESTABLISHING FACT ADMITTED.

In an action on a note by the purchaser, where the defense was that the company named as payee was fictitious or nonexisting, an admission by the maker, in his notice of special defense, that the person to whom he was indebted and to whom he gave the note informed him that "he was an officer of and a duly authorized agent for" said company, relieved the plaintiff from establishing this fact (Circuit Court Rule No. 23, § 6).

2. APPEAL AND ERROR — DEFENDANT'S TESTIMONY IN CONTRADICTION OF ADMISSION CONSIDERED MOST FAVORABLY IN SUPPORT OF JUDGMENT FOR PLAINTIFF ON REVIEW.

Defendant's testimony, if admissible to contradict an admission in his plea, where very contradictory, must be considered by the Supreme Court in its most favorable aspect to support the judgment in favor of plaintiff.

---

¹Pleading, 31 Cyc. pp. 676, 678; ²Appeal and Error, 4 C. J. § 2830.

3. BILLS AND NOTES—HOLDER IN DUE COURSE—FICTITIOUS NAMES. That a person was carrying on a lumber business under an assumed or fictitious company name without complying with 2 Comp. Laws 1915, § 6349, as amended by Act No. 263, Pub. Acts 1919, would be no defense to an action by an innocent purchaser on a note given the company in payment of a lumber bill, since the object of the statute is to protect the public from fraud and not take away the rights of innocent parties.

4. SAME—FICTITIOUS PAYEE—MAKER LIABLE TO INNOCENT PURCHASER WHERE HE UNDERSTOOD PAYEE WAS FICTITIOUS PERSON—NEGOTIABLE INSTRUMENTS LAW. Where, under the evidence, inferences may be drawn that the person to whom a note was given for a lumber bill was doing business under an assumed or fictitious company name, and that the maker of the note so understood, he may not avoid liability, in an action on the note by an innocent purchaser, on the ground that it is not negotiable and not payable to bearer under the negotiable instruments law (2 Comp. Laws 1915, § 6050, subd. 3), in view of section 6101, providing that the maker of a note engages that he will pay it, and admits the existence of the payee and his then capacity to indorse.

McDONALD, J., dissenting.

Error to Wayne; Gilbert (Parm C.), J., presiding. Submitted April 13, 1927.   (Docket No. 90.)   Decided January 3, 1928.

Assumpsit by the Peoples State Bank against Columbus Trombly and others on a promissory note. Judgment for plaintiff.   Defendant Trombly brings error.   Affirmed.

*Lynch & Lovett*, for appellant.

*Lightner, Oxtoby, Hanley & Crawford* (*Lester P. Dodd,* of counsel), for appellee.

McDONALD, J. (*dissenting*).   Columbus Trombly was indebted to the defendant Munz for lumber.   He

---

[3]Bills and Notes, 8 C. J. § 1032; Names, 29 Cyc. p. 270; [4]Bills and Notes, 8 C. J. §§ 95, 304; 3 R. C. L. 880; 1 R. C. L. Supp. 910; 4 R. C. L. Supp. 220; 5 R. C. L. Supp. 207; 6 R. C. L. Supp. 202.

executed and delivered to Munz a promissory note payable to the Adams Lumber Company, a fictitious and nonexisting company. Before maturity, for value and without notice of the fictitious character of the payee, the plaintiff bank purchased the note from Munz who indorsed it personally and in the name of the Adams Lumber Company, by G. Munz, Pres. In an action by the bank, the defendant resisted payment on the theory that the note was nonnegotiable because it was made payable to a fictitious person of which fact he had no knowledge. The trial court held that the plaintiff was a holder in due course and entered a judgment in its favor. The defendant reviews the case here on error.

The questions involved are troublesome, due to the apparent inconsistency of two provisions of the negotiable instruments law (2 Comp. Laws 1915, § 6040 *et seq.*). A negotiable note must be payable to order or to bearer. The note in question was payable to the order of the Adams Lumber Company. It had all of the other elements of negotiability. On its face it purported to be a negotiable instrument. But it was not payable to order if the payee named therein was fictitious or nonexisting. The evidence shows that the payee was fictitious and nonexisting. Therefore, though on its face it appears to be payable to order, it was not so payable. Was it payable to bearer? Section 11, paragraph 3, of the negotiable instruments law, says that a note is payable to bearer:

"When it is payable to a fictitious or nonexisting person, and such fact was known to the person making it so payable." 2 Comp. Laws 1915, § 6050.

The record shows that when the defendant signed the note in suit, it was not known to him that the payee was fictitious or nonexisting. Therefore the note was not payable to bearer. The British exchange act makes knowledge on the part of the maker immaterial,

and, notwithstanding our statutes, a few of the courts in this country have attempted to follow that rule. But the great weight of authority interprets paragraph 3 of section 11 to mean just what it says.     In *Harmon* v. *National Bank,* 153 Mich. 73, 79 (17 L. R. A. [N. S.] 514, 126 Am. St. Rep. 467), the court quotes with approval the following from *Shipman* v. *Bank of New York,* 126 N. Y. 318 (27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821) :

> "We are of the opinion, upon examination of the authorities cited by counsel on both sides, that this rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person.     The maker's intention is the controlling consideration which determines the character of such paper.     It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person."

As the note in the suit was neither payable to order nor to bearer, it was nonnegotiable.

The question arises as to what title, if any, the plaintiff got by the attempted indorsement of the fictitious payee.     In taking the instrument, it was the duty of the plaintiff to procure a genuine indorsement.     A valid indorsement is necessary to pass a negotiable instrument.     There can be no genuine or valid indorsement where the payee is fictitious.     There was none in this case.     The indorsement of Adams Lumber Company by Munz was in effect a forgery.     *Harmon* v. *National Bank, supra; People* v. *Warner,* 104 Mich. 337.     Being a forgery, the indorsement was wholly inoperative and the plaintiff acquired no title to the instrument.

But counsel for the plaintiff contend that having signed the note and put it into circulation, the defendant is precluded from raising the question as to

the fictitious character of the payee.    They base their contention on the following provision of the law:

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse."    2 Comp. Laws 1915, § 6101.

This section is evidently for the protection of a transferee who obtains a note by indorsement.    It seems to be out of harmony with paragraph 3 of section 11, which section is for the protection of the maker.    It is difficult to satisfactorily harmonize these provisions of the law.    If a maker be conclusively bound by the admissions in section 62, there would be no circumstances in which he could raise any question as to the fictitious character of the payee.    Every note payable to the order of a fictitious payee would be payable to bearer, and the fact that the maker was ignorant of the fiction would have no effect upon its negotiability.    If such were the rule, paragraph 3 of section 11 might as well be eliminated from the statute, for it would be wholly inoperative.    These seemingly conflicting provisions of the law ought to be so interpreted as to give effect to both of them if possible.    We think it is possible to do this by adopting the view that section 62 was intended to apply to all negotiable instruments payable to order and to those instruments payable to the order of a fictitious payee where the maker had knowledge of the fiction.    The latter instruments are treated as payable to bearer. They are the only instruments that are payable to bearer where the payee is fictitious.    They are negotiable and are intended by the maker to circulate. Now, if a maker signs and puts into circulation a note which he knows is payable to a fictitious person, he is required by section 62 to admit that there is an existing payee with capacity to indorse.    Having made these admissions to the world, he ought to be forever

estopped from thereafter controverting them. But section 62 could have no application to such paper if the maker did not know that the payee was fictitious. If he did not know of the fiction, it would not be payable to bearer. It would not be negotiable. And if he did not know of the fictitious character of the payee when he signed the note, he would not be precluded by the doctrine of estoppel from thereafter asserting the truth. Our examination of this question leads us to the conclusion that section 62 has no application to notes payable to bearer except to those notes which are payable to the order of a fictitious payee of which fact the maker has knowledge at the time he signs the instrument. In any event, it is not of great benefit to a transferee, because such notes do not require indorsement. They pass by delivery. In reference to these two sections of the negotiable instruments act, it was said in *Robertson Banking Co.* v. *Brasfield,* 202 Ala. 167 (79 South. 651):

"How this section harmonizes with subdivision 3 of section 4966, unless it applies to all instruments other than those payable to bearer, we are not called upon to decide; for, as above stated, the check in question was not payable to bearer, and if section 5016 makes Brasfield admit the existence of the payee, Johnson, and his capacity to indorse the check, this would but strengthen the reason and necessity of obtaining a genuine indorsement before paying the check. The section does not make Brasfield admit that any other than his named payee could properly and legally indorse the check."

It is further urged by counsel for the plaintiff that the defendant is estopped from denying the existence of the payee because of the general rule that, where the name of a party with which a person contracts is one importing a corporation, the person so dealing with it is estopped from denying its corporate existence. There is no question as to the general rule. See *Estey Manfg. Co.* v. *Runnels,* 55 Mich. 130; *Doyle*

v. *Mizner,* 42 Mich. 332;. 5 A. L. R. 1580, and annotations.   However, it has no application to the case under consideration.   It is true that the name of the payee as it appears in this note is one that imports a corporation, but the defendant had not been dealing with the Adams Lumber Company.   He had been dealing with Mr. Munz and was indebted to him for lumber.   When he settled his account by giving this note, Munz named the payee as the Adams Lumber Company.   If Munz had used this name in other transactions outside of and in addition to the one in suit, it would not have been a fictitious name within the meaning of the statute; and it would make no difference that it had no legal existence as a corporation.   The defendant is not here denying the legal existence of a corporation.   He is denying that there was a corporation in fact, that there was any person or concern going by that name or using that name.. In other words, he is contending that the name was entirely fictitious.

There was competent evidence sufficient to establish the fact that the payee in this note was fictitious or nonexisting.   The trial court did not find to the contrary.   In giving his reasons for permitting the plaintiff to recover, he seems to have labored under the erroneous impression that, if he held otherwise, the plaintiff would suffer a loss caused by some fault of the defendant.   The proximate cause of the plaintiff's loss is not that the defendant signed a note payable to a fictitious person, but because it purchased the note without ascertaining the identity of the payee named.

For the reasons stated, the plaintiff should not recover in this action.   The judgment of the circuit court should be reversed without a new trial.   The defendant should have costs.

SHARPE, J.   At the opening of the trial, the defendant Trombly obtained leave to amend his plea of

the general issue theretofore filed, by attaching thereto a notice of special defense.     In it he stated:

"1. The defendant Columbus Trombly will show that the defendant the Adams Lumber Company is a nonexistent, fictitious person.

"2. The defendant Columbus Trombly will show that on or about the first day of May, 1920, he became indebted to the defendant the Adams Lumber Company, or Gustave Munz, in the sum of three thousand six hundred ($3,600) dollars for lumber furnished by said defendant Gustave Munz, or by the Adams Lumber Company.     The said Munz at that time representing to this defendant that he was an officer of and a duly authorized agent for said Adams Lumber Company. That on the said first day of May, 1920, this defendant at the request of said Gustave Munz executed a promissory note in the amount of three thousand six hundred ($3,600) dollars, payable to the said Adams Lumber Company, the said Adams Lumber Company being made payee at the request of said Munz. *   *   *   That this defendant did at various times execute renewal notes to the said Adams Lumber Company at the request of defendant, said Munz, the said Munz at each time paying certain sums of money on the principal of said note to the Peoples State Bank, the plaintiff herein.     That this defendant had no knowledge at any time that the Adams Lumber Company was a fictitious person."

As a witness he was permitted to testify, over plaintiff's objection, that he "never had any dealings with the Adams Lumber Company;" that he did not notice that the note was payable to the company; that he did not care to whom it was payable so long as the bill was settled.     Later, when recalled, he testified:

"When I signed this note I did not know who it was payable to; I handed it to Munz with my name on it; I supposed I owed Munz for lumber; I was paying him something on account and gave this note expecting that it would apply on my account with Munz; I did not notice whether it was paid to John Smith or Henry Jones or the Adams Lumber Company; I saw the name Adams Lumber Company when I signed it; I gave this

note and some money as settlement to Munz;  \*  \*  \*
I did not know anything about Adams Lumber Company, or of such a company; I did not know whether there was such a company or not; I signed various renewals of this note and I read it; the one before this last one was payable to Adams Lumber Company; I knew the note was made with the Adams Lumber Company—I gave them a note and when I learned that Munz was fooling me out of what I had coming, I asked him, and I went over to the Peoples State Bank and I was chased out by the manager out of his office when I went in there to investigate after getting his notice of a note protest, then I went and scouted around at the bank and nobody knew about any note made to the Adams Lumber Company, and Mr. Munz called me and asked me to give him a renewal of this note and I told him I couldn't come down town, that he should mail me the note—here is the letter-head; here's the way the thing come right back by special delivery—and I would mail him a renewal back which I didn't do on account I found out he was trying to beat me."

In the notice he stated that Munz informed him at the time the note was given that "he was an officer of and a duly authorized agent for said Adams Lumber Company." This admission relieved plaintiff from establishing this fact. Circuit Court Rule No. 23, § 6; *Rolland Township* v. *Pakes,* 226 Mich. 284, 287, and cases cited. His testimony relative thereto, even if admissible to contradict such admission, is very contradictory. We must consider it in its most favorable aspect to support the judgment. The record discloses that the note was renewed several times.

Section 6101, 2 Comp. Laws 1915 (negotiable instruments law) reads:

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse."

From the record, when considered with this pro-

vision of the law, I think a fair inference may be drawn that Munz was doing business under the name of the Adams Lumber Company and that Trombly so understood.    His failure to comply with the statute regulating the carrying on of business under an assumed or fictitious name (2 Comp. Laws 1915, § 6349, as amended by Act No. 263, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 6353]) did not render the contract void.    It was—

"unlawful and unenforceable at the instance of the offending party only, but not as designed to take away the rights of innocent parties who may have dealt with the offenders in ignorance of their having violated the statute."    *Cashin* v. *Pliter*, 168 Mich. 386, 391 (Ann. Cas. 1913C, 697), quoted approvingly in *Pontiac Savings Bank* v. *Pipe Co.*, 178 Mich. 261, 264.

Trombly knew that he was executing a note payable to the Adams Lumber Company.    When he signed the renewals, he knew that Munz was negotiating them at the plaintiff bank.    Each renewal was a representation to the bank that he was indebted to the lumber company.    He should not now be permitted to avoid liability for the reason stated.

The judgment is affirmed.

Fellows, Wiest, Clark, and Bird, JJ., concurred with Sharpe, J.

The late Justice Snow and Justice Steere took no part in this decision.