BEECH-NUT PACKING COMPANY, Plaintiff, *v.* THE NATIONAL CITY BANK OF NEW YORK, Defendant, and FLORA BACH and Another, Individually, and as Copartners, Doing Business under the Firm Name and Style of EDWARD BACH & Co., Defendants, Impleaded.

Municipal Court of New York, Borough of Manhattan, First District, December 7, 1933.

*Alvin C. Cass,* for the plaintiff.

*Shearman & Sterling,* for the defendant The National City Bank of New York.

*Abraham Grenthal,* for Flora Bach and another, individually, etc., defendants, impleaded.

WATSON, J. Edward Bach and Isaac Grenthal were copartners under the firm name and style of Edward Bach & Co. As such, they were lessees of certain premises in the borough of Manhattan, city of New York. On or about July 3, 1930, Edward Bach, on behalf of the partnership, entered into a lease, in his own name, as landlord, with the plaintiff, as tenant, of a certain sign space on those premises.

Edward Bach died July 6, 1931, leaving a last will and testament, naming Flora Bach sole legatee and sole executrix. The will was duly admitted to probate on August 17, 1931, and letters testamentary thereon were issued to Flora Bach, who qualified and has since acted as executrix. The estate of Edward Bach is solvent and all his debts have been paid.

Subsequent to the death of Edward Bach, Flora Bach entered into partnership with Isaac Grenthal in the firm of Edward Bach & Co.

On August 30, 1932, plaintiff drew its check on defendant bank, wherein it was a depositor, to the order of Edward Bach, for the sum of $225. This check was in payment of semi-annual rent under the aforesaid lease, and recites on its face that it is " in settlement of sign rent." This check was received by Isaac Grenthal and Flora Bach about August 31, 1932, and with the knowledge and express consent of Flora Bach was, about September 13, 1932, indorsed by Isaac Grenthal in the names of Edward Bach and E. Bach & Co., and deposited in the account of Edward Bach & Co. with the Chemical Bank and Trust Company, which there-

after collected the amount thereof from the defendant and paid such proceeds over to Edward Bach & Co. The defendant, having paid the check, charged the amount thereof to the account of the plaintiff.

The plaintiff seeks to recover this amount on the ground that the check was neither indorsed by nor paid to Edward Bach, the payee therein named; that the indorsement of his name was a forgery, and payment thereon was unauthorized.

The relation between a bank and its depositor is that of debtor and creditor, and the law implies a contract on the part of the bank to disburse the money standing to the depositor's credit only upon his order and in conformity with his directions; no payments can be charged against a depositor unless made to such persons as the depositor directed. (*Shipman* v. *Bank S. N. Y.*, 126 N. Y. 318.) Such is the law; how are we to apply it?

Edward Bach, the individual named in the check as payee, was dead when the check was drawn. He was a non-existing person. If that fact was known to plaintiff at that time, the check would be regarded as payable to bearer. (Neg. Inst. Law, § 28, subd. 3.) But, although Edward Bach died more than a year before, it does not appear that such fact was known to plaintiff. However, section 111 of the Negotiable Instruments Law provides that " The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse." I find no reported decision in this State passing upon the effect of this provision. In *McCornack* v. *Central State Bank* (203 Iowa, 833; 211 N. W. 542; 52 A. L. R. 1297) a bare majority of the court, against a vigorous dissent by the minority, expressed the opinion that such a provision does not inure to the benefit of the drawee; but the argument turned rather upon the question whether payment had been made to one to whom the drawer did not intend the payment to be made. The distinction between the admission and its operation is observed in *Robertson Banking Co.* v. *Brasfield* (202 Ala. 167; 79 So. 651), also decided by a divided court, in which the majority held that the statute does not make the drawer admit that any one other than his named payee could properly and legally indorse the check.

That there may be instances in which a bank may, upon the principle of estoppel, claim protection against its depositor for payments made upon forged indorsements, is recognized by the authorities. (*Shipman* v. *Bank S. N. Y.*, *supra*.) In my opinion, this statutory admission operates by way of estoppel, and runs as well to the drawee as to a holder in due course; the former is as much entitled to rely upon it as the latter.

The question remains, whether payment has been made to one to whom the drawer did not intend the payment to be made. This is not a case, such as those which have received the attention of the courts, wherein the depositor, in drawing the check, has been the victim of a swindler or an impostor. When the plaintiff drew this check to the order of Edward Bach, it intended thereby to pay rent due under a hiring from him. Can it be said that plaintiff intended to make this payment only if he was then living, but not if he were dead? Concededly, if he were then living, but died without having indorsed or deposited the check, his executrix could have collected it. There is no reason why the same should not be true, where, as here, the person named as payee was dead when the check was drawn. Plaintiff, by drawing the check, admitted the existence of the payee and that payee did exist in the person of the executrix of Edward Bach; by her authority this check was indorsed and collected and payment was thus properly made.

The solution of the problem may be approached from another angle. Edward Bach and the impleaded defendant, Isaac Grenthal, as copartners, owned the leasehold of the premises. The lease to plaintiff, while made in the name of Edward Bach, as landlord, was partnership property. On the death of Edward Bach the title to the partnership assets and property vested in the surviving partner, Isaac Grenthal, as legal owner (*Costello* v. *Costello*, 209 N. Y. 252, 259), and he had the right to wind up the partnership affairs. (Partnership Law, § 68; *Costello* v. *Costello*, *supra*.) The impleaded defendant, Isaac Grenthal, accordingly had title to the check, which was a partnership asset, and had the right to indorse and collect it, as he did.

I disregard, as immaterial, the allegation of the answer that Flora Bach is willing to indorse the check individually and as executrix or in either capacity. I disregard likewise the allegations as to the formation of a copartnership, after the death of Edward Bach, between the impleaded defendants, Flora Bach and Isaac Grenthal, since it does not appear that the new partnership succeeded either to the leasehold interest or to the business of the original firm as a going concern.

Matters urged as to the obligations and duties of the executrix, I have not considered, since they are not germane to the issue. They do not concern the plaintiff here and may be pressed in an appropriate action or proceeding by those interested in the administration of the estate. The same comment applies with reference to section 231 of the Surrogate's Court Act, which has not changed

the rule of law as between bank and depositor. (*Manufacturers Trust Co.* v. *U. S. Mtge. & T. Co.*, 244 N. Y. 550.)

There is here no forgery, because there was no attempt to defraud. (*Manufacturers Trust Co.* v. *U. S. Mtge. & T. Co.*, 122 Misc. 726, 733; affd., 213 App. Div. 345; affd., 244 N. Y. 550.) As I view the case the check was paid to the person intended. (*Alent* v. *Bank of U. S.*, 131 Misc. 370; *Yanowe & Co., Inc.,* v. *Am. Exchange Irving Trust Co.*, 226 App. Div. 530.)

These conclusions lead to a denial of plaintiff's motion, and it follows that defendant's motion for summary judgment against the impleaded defendants must, likewise, be denied.