# McKee *v.* Griffin.

66  211
117 563

*Action on Official Bond of Register in Chancery.*

1. *Official bonds; liability of sureties.*—The sureties on an official bond, conditioned as prescribed by statute (Code, §§ 163, 179), are bound for the default of their principal in the discharge of new duties imposed upon him by law subsequent to the execution of the bond; but the liability is limited to duties enjoined, imposed, or sanctioned by law—that is, official duties—and does not extend to private acts, not within the line of official duty and authority, and not under color of office.

2. *Sale of property for partition; payment of proceeds to probate judge.* Under the statutes which were of force in August, 1861, the commissioners appointed by the probate judge to sell property for partition among several joint owners, or tenants in common, were not authorized to pay over the proceeds of sale to the probate judge, nor was he authorized or required to receive the money officially; and the subsequent statute, approved November 11th, 1861, which authorized such payments to be made, could not operate retroactively on a payment already made, and thereby convert its receipt into an official act.

3. *Official bond of register in chancery; liability of sureties.*—The sureties on the official bond of a register in chancery, executed in 1857, and conditioned as prescribed by law, are not liable for the default of their principal, as to moneys paid to him while acting in the capacity of probate judge, when there was no law of force at the time the payment was made, authorizing such payment to

be made to the probate judge; and the subsequent passage of a law authoriz-
ing such payments could not retroact upon an unauthorized payment already
made, nor render the sureties liable for a default in reference to it.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. JOHN HENDERSON.

This action was brought by William McKee, against William M. Griffin, Wash. W. Griffin, and David C. Jordan, sureties on the official bond of Walter P. McFarlane as register in chancery of the 32d district; and was commenced on the 8th July, 1871. The bond was dated and approved August 31st, 1857, and was conditioned as follows: "If the said Walter P. McFarlane shall well and truly fulfill and discharge the duties of such office, during the time he continues therein, or discharges any of the duties thereof as register," &c., "then the above obligation to be void." The default charged against McFarlane, as alleged in the complaint, and established by the evidence adduced on the trial, was in connection with certain moneys, about $800, the proceeds of the sale of slaves belonging to the estate of Jesse Blassingame, deceased, which were sold for the purpose of making partition among the parties interested, being the distributees of the estate. The order for the sale of the slaves was made by McFarlane as register, acting *pro hac vice* for the probate judge; and the proceeds of sale were paid over to him, on the 3d August, 1861, by the commissioners who conducted the sale. The plaintiff, a judgment creditor of Joseph Blassingame, one of the distributees, sued out a garnishment against said McFarlane, as the debtor of said Blassingame, seeking to reach his distributive share of said moneys; and he obtained a judgment by default against said McFarlane, which was not made final until the September term of the court, 1870, and on which an execution was issued, and returned "No property found." The plaintiff sought, by this action, to charge the sureties on McFarlane's official bond as register with the amount of this judgment. In its rulings on this state of facts, in the charges given and the refusal of charges asked, the court held that the plaintiff was not entitled to recover; and these rulings, to which exceptions were duly reserved, are now assigned as error.

ROBINSON & BROWN, for appellant.

STONE, J.—The present suit is against the sureties of McFarlane, on his official bond as register of the Chancery Court. The bond was executed and approved August 13th, 1857, and recited that McFarlane had been appointed register of said court. As the law then stood, registers held office for

four years, unless removed by the chancellor for misbehavior, malpractice, or negligence.—Rev. Code, § 720. McFarlane's term of office, under that appointment, and under that bond, terminated August 13th, 1861. The condition of the bond was, that McFarlane would "well and truly fulfill and discharge the duties of such office during the time he continues therein, or discharges any of the duties thereof." This is a compliance with the statutory requirement.—Code of 1876, § 163. Such bond is obligatory on the principal and sureties, for any breach of the condition "during the time the officer continues in office, or discharges any of the duties thereof;" "for the faithful discharge of any duties which may be required of such officer, by any law passed subsequently to the execution of such bond, although no such condition is expressed therein; for the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office, as by his failure to perform, or the improper or neglectful performance of those duties imposed by law."—Code of 1876, § 179. Our rulings on this question, following both the language of the statute and the uniform rulings of other courts, have been, that while the legislature may cast new duties on an officer, and hold his sureties on a bond previously executed bound for their faithful performance; yet this liability is limited to duties enjoined, imposed or sanctioned by law. In other words, the duty, for the disregard or violation of which complaint is made, or in reference to which the wrongful act is committed, must be one imposed or authorized by law. A mere private act, not pertaining to any function the law casts on him, although done by one holding a bonded office, imposes no liability on his sureties.—Addison on Contracts, § 1117. "For acts not within the line of official duty and authority, not under color of office, he may incur personal, not official responsibility; and in that personal responsibility, the sureties on his official bond are not involved."—*Coleman v. Ormond*, 60 Ala. 328; *Brewer v. King*, 63 Ala. 511; *Morrow v. Wood*, 56 Ala. 1; *Kelly v. Moore*, 51 Ala. 364; *Moore v. Madison Co.*, 38 Ala. 670; *McElhaney v. Gilleland*, 30 Ala. 183. See, also, *Drake v. Webb*, 63 Ala. 596.

We have stated *when* Mr. McFarlane entered upon his office—August 13th, 1857—and when the term covered by that bond expired—August 13th, 1861. During that term, probably in 1859, Mr. McFarlane, acting for the judge of probate, granted an order to sell some slaves for partition among several owners, and appointed commissioners to make the sale. The sale was made by the commissioners. These proceedings were had under chapter 7, title 2, part 3, of the Code

of 1852, as the same had been amended by acts approved February 15th, 1854 (Pamph. Acts, 72); approved Feb. 5th, 1856 (Pamph. Acts, 20); and, probably, by act approved Feb. 8th, 1858 (Pamph. Acts, 252). The same subject forms chapter 7, title 2, part 3, of the Code of 1867, commencing with section 3105; and it forms article 1, chapter 14, title 2, part 3, of the Code of 1876, commencing with section 3497. The right of the register, acting for the judge of probate, in granting the order, and appointing commissioners to make the sale, was not questioned in the court below, and is not questioned here. The sole question raised for our determination is, whether McFarlane's sureties as register are liable for the default charged against him.

A suit was brought by McKee, against one of the tenants in common, in 1859, and McFarlane, as register, was then summoned as a garnishee. The purpose was to reach and condemn the defendant's interest in the proceeds of the property, which had been sold for partition. The property, except 5 per cent. cash, had been sold on credit, bonds with surety taken to secure the purchase-money, and the money and bonds were in the hands of the commissioners when the garnishment was served. August, 1861 (probably on the 3d day), the commissioners, having collected a part of the money due on the bonds, reported their sale and proceedings to McFarlane, register, and then paid over to him the money in their hands, about eight hundred dollars. McKee prosecuted his suit against the defendant, one of the tenants in common, and obtained judgment against him. McFarlane failed to answer as garnishee; judgment by default was taken against him, and it was made final. Execution was issued on each of these judgments, and returned no property found.

At the time the money was paid to McFarlane (August 3d, 1861), there was no statute authorizing the commissioners, appointed to sell property for partition, to pay the proceeds to the judge of probate. Nor was there such statute, during the term covered by the official bond sued on in this action. True, on the 11th November, 1861, an act was approved, explanatory of the act of February 5th, 1856, which authorized the commissioners to "discharge themselves from all liability, for moneys received by them for property sold under said act, by paying over the same into the hands of the judge of probate."—Pamph. Acts, 55; Code of 1876, § 3519. This, however, could not retroact, and make that an official act, which at the time of its doing was a private deposit, unauthorized by any law.

There are other grave questions which might be discussed in this case, but what we have said above renders their dis-

cussion unnecessary. The plaintiff has shown no cause of action against the defendants; and under the undisputed, record facts, he has no right of recovery against them. Without noticing specially the several points raised, we think the court rightly ruled that, under the testimony, the plaintiff was not entitled to recover.—1 Brick. Dig. 780, §§ 96, 97.

The judgment is affirmed.

BRICKELL, C. J., not sitting.