[No. 19005.  Department One. — January 18, 1893.]

EDWARD HATTON, APPELLANT, v. A. C. HOLMES ET AL., RESPONDENTS.

BANKS AND BANKING — CHECKS — FORGED INDORSEMENT OF PAYEE'S NAME — RIGHTS OF DRAWER. — A bank which pays a check upon the forged indorsement of the name of the payee acquires no right on it as against the drawer of the check, and has no right to charge the amount paid against the drawer's account.

ID. — LIABILITY OF NOTARY — FALSE ACKNOWLEDGMENT OF FORGED MORTGAGE — NOTE FOR CHECK WITH FORGED INDORSEMENT. — In an action against a notary public to recover as damages a sum of money, which was alleged to have been loaned by the plaintiff upon a forged mortgage of land, which contained a false acknowledgment by the notary, where it appears that the money was paid by a bank in which the plaintiff had a deposit upon a forged indorsement of the payee's name upon a check given by the plaintiff for the money to be loaned, no loss is shown by the plaintiff, and he is not entitled to recover as against the notary for the money so paid by the bank.

NEGLIGENCE OF NOTARY — INTRODUCTION BY THIRD PARTY — NEGLIGENCE OF LOSING PARTY. — A notary public has no right, in disregard of the statute, to certify that he knows a person whom he does not know, on the mere introduction of some third party, and if he does so, and loss results therefrom, he renders himself and his sureties liable to make good the loss, unless the negligence of the losing party is the proximate cause of the loss.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*Burnett & Gibbon*, for Appellant.

*Wilson & Lamme*, for Respondents.

BELCHER, C. — In September, 1887, J. W. Keifer, of Kansas City, Missouri, purchased eight acres of land

situate in the county of Los Angeles, in this state, and had the deed made to Maria J. Keifer, his wife. In December, 1889, one O. B. Jenkins applied to the plaintiff for a loan of money on this land. He represented that Maria J. Keifer, of Kansas City, was the owner of the land, and that he was her agent, and wanted to borrow the money for her. He exhibited to plaintiff a certificate showing title in Mrs. Keifer, and together they examined the property, and plaintiff agreed to loan on it one thousand dollars if the mortgage was properly drawn up and duly certified. On the second day of January, 1890, Jenkins delivered to plaintiff a note for one thousand dollars, payable to his order two years after date, with interest at the rate of fifteen per cent per annum, payable semi-annually, and if not paid to be compounded, and a mortgage on the land to secure payment of the note, and the plaintiff gave Jenkins his check on a bank in Los Angeles for one thousand dollars, payable to Maria J. Keifer. The mortgage described the mortgagors as "Maria J. Keifer, of Kansas City, Jackson County, state of Missouri, and J. W. Keifer," and both the note and mortgage appeared to have been signed by the two mortgagors. Attached to the mortgage was a certificate of acknowledgment in proper form, made by the defendant A. C. Holmes, who was a notary public in and for the county of Los Angeles, certifying that on the thirty-first day of December, 1889, "before me . . . . personally appeared Maria J. Keifer, wife of J. Keifer, known to me to be the person described in, whose name is subscribed to, and who executed, the within and annexed instrument," etc.

Attached to the mortgage was also a certificate of acknowledgment, made by another notary public, certifying that on the second day of January, 1890, "before me . . . . personally appeared J. W. Keifer (husband of Maria J. Keifer), known to me to be the person described in and whose name is subscribed to the annexed instrument, and he acknowledged to me that he executed the same."

Jenkins presented the check received from the plain-tiff to the bank for payment. At the time of the presentation, the name "Maria J. Keifer" was indorsed upon the back of the check, and he then also indorsed his own name. The bank paid him the amount called for, and shortly thereafter he disappeared, leaving no property, and his whereabouts was thereafter wholly unknown.

The note and mortgage were in fact forgeries. Jenkins was not the agent of Mrs. Keifer for any purpose, and she never authorized him, or any one else, to negotiate a loan upon the said property. On the thirty-first day of December, 1889, both Mr. and Mrs. Keifer were in Kansas City, and neither of them ever executed the pretended note or mortgage, or heard of them, until some months afterwards, when Mr. Keifer received a letter from Los Angeles stating that a fraud had been attempted. They were not acquainted with the notaries who certified to the acknowledgments, and knew no other persons bearing their names.

Defendant Holmes was a notary public in December, 1889, and took the acknowledgment purporting to be that of Mrs. Keifer. He did not know anybody by the name of Maria J. Keifer, but he kept a record of all acknowledgments taken by him, and from that and the certificate he knew that some woman must have appeared and been introduced to him as Maria J. Keifer, though he made no entry and had no recollection as to who the person was who introduced her.

Plaintiff commenced this action against the defendant Holmes and the sureties on his official bond to recover damages in the sum of one thousand dollars, and interest thereon from January 2, 1890, and he alleged, among other things, that Holmes, as notary public, "negligently and falsely certified in the acknowledgment to said forged mortgage that the person so falsely personating Maria J. Keifer was to him well known to be the said Maria J. Keifer described in said instrument," and that he, "by reason of said acknowledgment

and the certifications therein contained, and relying upon the truth of the same, believed the said mortgage to be a genuine and valid instrument and encumbrance upon the real estate therein described, and accepted the same as security for the payment," etc.

The defendants, by their answer, denied most of the averments of the complaint.

At the trial, the plaintiff proved the facts to be substantially as before stated, and rested his case. The defendants then moved for a nonsuit upon the following grounds: "1. That there was no cause of action made out against the defendants, or either of them; 2. The evidence fails to show that the defendant A. C. Holmes was negligent in taking and making the certificate to the mortgage; 3. That there is no evidence showing or tending to show that the mortgage was not acknowledged before him (Holmes) by one Maria J. Keifer; 4. That the evidence clearly shows that the damage sustained by the plaintiff (if any at all) was not in the act of the notary certifying to the mortgage, or in the fact that the mortgage was forged, if it may be assumed that it was forged, but from the fact that the bank on which he gave the check paid that check under a forged indorsement, and his remedy, if any, is against the bank, and not against the notary."

The court granted the motion, and the plaintiff thereupon appealed from the judgment entered against him.

It is clear from the statement of the case which has been made that a scheme was devised to get the plaintiff's money by fraudulent means, and that Jenkins was the active agent in effecting the ends sought to be accomplished. Other parties were engaged with him, but it does not appear who they were. It is also clear that Holmes, as a notary, was guilty of negligence in taking and certifying the acknowledgment of a person whom he did not know, and without any proof, by the oath or affirmation of a credible witness, that she was the person she pretended to be. The code provides: " The acknowledgment of an instrument must not be

taken, unless the officer taking it knows, or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person making such acknowledgment is the individual who is described in and who executed the instrument." (Civ. Code, sec. 1185.)

A notary has no right, in disregard of this plain provision of the statute, to certify that he knows a person whom he does not know, on the mere introduction of some third party; and if he does so, and loss results therefrom, he renders himself and his sureties liable to make good the loss. This liability does not, however, extend to a case where the negligence of the losing party is the proximate cause of the loss. (*Bank of Savings* v. *Murfey*, 68 Cal. 455; *Overacre* v. *Blake*, 82 Cal. 77.)

The questions, then, are: 1. Did the plaintiff in this case suffer the loss alleged? and 2. If he did, was it proximately caused by his own negligence?

1. The only loss claimed to have been sustained by the plaintiff arose from the fact that he delivered his check to Jenkins, and the latter collected and appropriated the money. The check, as before stated, was payable to Mrs. Keifer, and when presented for payment, had her name indorsed upon the back of it. The indorsement was a forgery, but the bank, without hesitation or inquiry, so far as appears, paid over the money. The payment was not authorized, and the bank had no right to charge the amount paid against the plaintiff's account. "A forged indorsement passes no title to commercial paper, negotiable only by indorsement, and payment by the drawee, although in good faith, of a draft so indorsed, is no payment at all as to the true owner. Payments made upon forged instruments are therefore at the peril of the bank, unless it can claim protection upon some principle of estoppel, or by reason of some negligence chargeable to the depositor. It is the duty of a bank to pay the checks of its customer, drawn payable to order, to the person who becomes holder by a genuine indorsement, and it cannot charge him with payments made otherwise. . . . . And where, by the

fraud of a third person, a depositor is induced to draw his check payable to a non-existing person or order, the drawer being in ignorance of the fact, and intending no fraud, the bank on which the check is so drawn has no authority to pay it and charge the amount to the account of its customer, on the indorsement of the party presenting it, although it appears to have been previously indorsed by the party named as payee. Such indorsement is, in effect, a forgery, and the payment thereon by the bank confers no right on it as against the drawer of the check." (Boone on Banking, sec. 192; *Janin v. London etc. Bank*, 92 Cal. 14.)

If the above is a correct statement of the law, and we think it is, then it follows that the plaintiff had sustained no loss, and was therefore not entitled to recover.

2. In view of what has been said, it is unnecessary to consider the second question, above propounded.

In our opinion, the court was justified in granting the nonsuit upon the fourth ground stated, and the judgment should therefore be affirmed.

TEMPLE, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the judgment is affirmed.

GAROUTTE, J., PATERSON, J., HARRISON, J.