(82 South. 429)
AMERICAN SURETY CO. OF NEW YORK v. FIRST NAT. BANK OF MONTGOMERY. (3 Div. 394.)

(Supreme Court of Alabama. June 19, 1919.)

1. NOTARIES ⬤⟳11 — LIABILITY ON OFFICIAL BONDS—FALSE ACKNOWLEDGMENTS—PROXIMATE CAUSE OF INJURY.

Where an attorney, who was also a notary public, obtained for a fictitious client a loan made in the form of a check secured by a forged mortgage, falsely acknowledged by him as a notary, which check was deposited in a bank by the forger, ostensibly for the benefit of the fictitious payee, the bank cashing such check and guaranteeing the genuineness of its indorsements could not, after the discovery of the fraud, recover on the notary's official bond, since the damage was not the proximate consequence of the false certificate, in view of Code 1907, § 1500.

2. OFFICERS ⬤⟳116—LIABILITY FOR MISCONDUCT OR NEGLIGENCE—OFFICIAL AND PRIVATE CAPACITY.

A mere private act of an officer, no matter how negligent, wrongful, or willful, not pertaining to any function or duty which the law imposes, and not done under color of office, creates no official responsibility or liability, though it may create a personal responsibility or liability.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the First National Bank of Montgomery against the American Surety Company of New York. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Stuart Mackenzie, of Montgomery, for appellant.
Steiner, Crum & Weil, of Montgomery, for appellee.

MAYFIELD, J. Appellant was surety on the official bond of one Garland Kirven, a notary public and ex officio justice of the peace at Linden, Marengo county, Ala. Kirven was also an attorney at law, and was, as such, engaged in negotiating loans. In this capacity, he often acted as a broker, bringing the parties together and in a way representing both parties—borrower and lender. For this purpose he also acted as abstracter of titles and attorney to pass on titles. In this capacity he applied to one J. E. Brasfield for a loan to one D. W. Johnson, whom Kirven claimed to be a client of his, but who was in fact a fictitious person, and had no existence, except in the fraudulent fiction of Kirven's mind.

Brasfield, having no knowledge of the fraud or fiction, agreed to make the loan to D. W. Johnson, provided sufficient security was given. Kirven forged notes and a mortgage on certain lands in Marengo county, purporting to be signed by D. W. Johnson, and payable to Brasfield, evidencing and securing the loan by Brasfield to Johnson, which notes and mortgage were accepted by Brasfield, who, believing them to be genuine and valid, made his check payable to the fictitious person, D. W. Johnson, for $2,500, in consideration thereof, and drawn on the Robertson Banking Company, of Demopolis, Ala. Brasfield sent this check to Kirven as the agent or attorney of the fictitious client, D. W. Johnson. Kirven then, for some reason, wrote appellee bank at Montgomery, Ala., with whom he had theretofore done business, that his fictitious client, whom he represented as residing near Linden, Ala., desired to open an account with the appellee. Appellee accepted the offer, believing the statements in Kirven's letter to be true. Kirven then sent appellee the check in question, purporting to be indorsed by the payee, D. W. Johnson, but which was in fact indorsed by Kirven, who also made out and sent with the check the signature card, purporting to be the signature of the fictitious

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

payee, D. W. Johnson. The appellee bank accepted the same as a deposit, believing the check indorsements and signature card to be genuine and valid, and entered on its books an account with the fictitious person, D. W. Johnson, crediting him with the amount of the check, $2,500, and indorsed the check, guaranteeing all prior indorsements thereof. Appellee then forwarded the check to the drawee bank for collection, and it was in due course paid and charged to the account of Brasfield, the drawer of the check. In the course of time the account of the fictitious depositor in the bank of appellee was balanced by checks drawn against the account. These checks purported to be signed by the fictitious depositor, D. W. Johnson, but in fact were signed by Kirven, the same forger of the original note and mortgage, indorser of the check, and the signature card.

Before, or about the time of, the discovery of these forgeries and frauds on the part of Kirven, he committed suicide. When the mortgagee discovered the forgery and fraud of his notes and mortgage, and that his check was payable to a fictitious person, he brought suit against the payee bank, the Robertson Banking Company of Demopolis, and recovered judgment as for his loss and damages. See report of this case in 79 South. 651.[1] Appellee bank, having indorsed the check and guaranteed prior indorsements thereof, which included the forged one by Kirven, acknowledged its liability to the Robertson Banking Company, and paid the loss and damages of the payee bank.

Kirven, who committed all the frauds and forgeries before stated, also, as notary public and ex officio justice of the peace, certified to the acknowledgment of the fictitious maker of the mortgage to Brasfield, which, of course, was false and fraudulent on his part as such officer. Appellant being surety on his (Kirven's) official bond, appellee brought this action against it as such surety to recover damages on account of such fraudulent acts on the part of Kirven as notary public and ex officio justice of the peace.

The original counts of the complaint first declared in the name of Brasfield for the use and benefit of appellee bank. Demurrers being sustained as to these counts, the complaint was amended by striking out the name of Brasfield as nominal plaintiff, and declaring in the name of appellee bank alone. Demurrers to the complaint as amended being overruled, the appellant pleaded the general issue and two special pleas—one, in substance, that plaintiff's loss was not the proximate result of the official wrong of the notary Kirven; the other, that plaintiff's loss was the proximate result of its own negligence. Demurrers were sustained to the special pleas, and the trial had on the general issue, on an agreed statement of facts, resulting in judgment for appellee.

[1] 202 Ala. 167.

## Opinion.

The legal effect of official bonds in this state, for what purpose and for whose use and benefit they are executed, is in a large measure regulated by statute. Section 1500 of the Code is as follows:

"*Legal Effect of Official Bond.*—Every official bond is obligatory on the principal and sureties thereon—

"1. For every breach of the condition during the time the officer continues in office, or discharges any of the duties thereof.

"2. For the faithful discharge of any duties which may be required of such officer by any law passed subsequently to the execution of such bond, although no such condition is expressed therein.

"3. For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by his failure to perform, or the improper or neglectful performance of those duties imposed by law.

"4. The words, 'For the use and benefit of every person injured,' as used in subdivision 3, shall include all persons having a direct and proximate interest in the official act or omission, and all persons connected with such official act or omission by estate or interest."

To actions on official bonds the rule of law has been applied, as it is in many other kinds of actions, that only such damages are recoverable as are the natural and proximate consequence of the wrongful act complained of as injurious. Irion v. Lewis, 56 Ala. 190, 192; Bullock v. Ferguson, 30 Ala. 227. The law does not attempt to make reparation to all parties to the remotest degree, who are injured by a wrong committed by an officer; it is only the proximate injury, and not the remote ones, which the law endeavors to compensate. The remote ones it classes as damnum absque injuria. Dale v. Grant, 34 N. J. Law, 143, 149; Murphree on Official Bonds, § 468.

Mr. Murphree says as a general rule a public officer, and a fortiori his surety, "is liable only to the person to whom the particular duty is owing." And the author adds that it is by no means sufficient to show negligence on the part of the officer and an injury to the plaintiff; it must be shown, also, that such negligence and consequent injury constituted a breach of some duty which the officer owed the plaintiff. This rule of course is and may be modified by statute to some extent; but so far as we know no statute has attempted to make the officer as such, or his sureties, liable as for all injury, however remote, from the wrongful official act. As said by Stone, J.:

"The damages which are recoverable must be the natural and proximate consequence of the act complained of." Irion v. Lewis, 56 Ala. 192.

Is the plaintiff in this case connected with such official act of making a false certificate of acknowledgment to the mortgage, by es-

tate or interest, as to bring it within the protection of the statute? If not, then, of course, it cannot maintain this action; if so, it can. This is the only doubtful question, if it can be said to be doubtful.

This plaintiff, appellee here, has not now, and never has had, the slightest interest of any kind in that mortgage or the certificate thereof. It never had any knowledge or notice of the existence of such a mortgage or certificate until long after its liability was fixed. It had no dealings whatever with Brasfield, the mortgagee. Kirven did not deal with it as a notary, but as an individual, and as a customer of it, and as a pretended friend, obtaining other customers for it. His acts, words, and forgeries, in dealing with it, were acts as an individual, and not as an officer. Its loss was due solely to the frauds of Kirven as an individual, and its own negligence, or acts for which it made itself liable, in relying on Kirven's statements, and in indorsing and paying the check which contained Kirven's forged indorsement. It is not at all certain that the false certificate of acknowledgment to the mortgage, the only official act alleged or relied upon by appellee. was even the remote or indirect cause of appellee's loss and damage, much less the proximate and direct cause.

Suppose the certificate had certified the truth, instead of a falsehood; would appellee's condition have been any better than it is? Suppose Kirven had had such a client as Johnson, and the latter had executed the mortgage and acknowledged it, as the papers purported to show, and Kirven had forged the indorsement of the check as he did, and obtained the money on it as he did; would not appellee have been liable to the Robertson Banking Company on its indorsement for paying the money as it did? The only difference would have been that Johnson, instead of Brasfield, would then have sued the Robertson Banking Company, and appellee would have been liable to the Robertson Banking Company, just as it is now, or was before it discharged its liability by paying it.

Let us apply the test in another way: Suppose the Robertson Banking Company had sued appellee; could it have defended by alleging and proving that the certificate of acknowledgment was true and not false? In such action, would it be at all necessary for the Robertson Banking Company to allege and prove that this certificate of acknowledgment was false and fraudulent? Would its truth or falsehood, its existence or nonexistence, have aught to do with the liability or nonliability of appellee to the Robertson Banking Company? The same would have been true, even in the action by Brasfield against the Robertson Banking Company. Whether the certificate was true or false would, however, have nothing whatever to do with the liability or nonliability

of Robertson Banking Company. It was the forged indorsement by Kirven as an individual that was the undoing of both banks. So it is really doubtful if the wrongful official act of Kirven was the remote cause, much less the proximate cause, of appellee's injury and loss.

Of course, it was a wrongful act, and a part of Kirven's scheme to obtain Brasfield's money; but it was not the direct or proximate cause of the liability of either bank. They would both have been liable, if the official act had been lawful and true, instead of unlawful and false. If Kirven were living and solvent, it is perfectly plain that appellee would have a right of action against him, but it would be personally as for fraud and deceit, as to his fraudulent representations and forgery, not for the false certificate, as to that they would have no concern. If the certificate were true, it would be no defense for Kirven; and if false, it would give plaintiff no cause of action.

[1] If Kirven could not be held liable to appellee as for the false certificate, surely his sureties ought not to be. The surety company, appellant here, is liable only because it was surety for Kirven's official acts as notary, and not for his individual acts as a friend and trusted customer of the appellee bank. The bank was liable only because it trusted Kirven's individual acts and indorsed commercial paper on the faith of his representations.

[2] A mere private act of an officer, no matter how negligent, wrongful, or willful, not pertaining to any function or duty which the law imposes, and not done under color of office, incurs no official responsibility or liability, though it may incur personal responsibility or liability. McKee v. Griffin, 66 Ala. 213; Coleman v. Ormond, 60 Ala. 328; Drake v. Webb, 63 Ala. 596. The rule in reference to the liability of a notary as for a false certificate of acknowledgment, as in this case, is well stated in 10 R. C. L. 336, as follows:

"It must appear that the default of the notary was the proximate cause of the loss or there can be no recovery, so that where his false certificate was not relied on, or the notary acted at the instance or on the introduction of the injured party, there can be no recovery; and where the security which was acknowledged was valueless, or the loss was contributed to by a forged check, for which a bank is liable, there can be no recovery."

Many cases may be found cited in notes to the report of the cases of Joost v. Craig, 131 Cal. 504, 63 Pac. 840, 82 Am. St. Rep. 374, 384, and Howcott v. Talen et al., 133 La. 845, 63 South. 376, 49 L. R. A. (N. S.) 45, 50. The case of Hatton v. Holmes, 97 Cal. 208, 31 Pac. 1131, is almost a "grey horse" case with the one now under consideration. The substance of the decision is well stated in the

note above referred to in 49 L. R. A. (N. S.) 51, as follows:

"Where a notary falsely certified to the acknowledgment of a forged mortgage, stating that he knew the person falsely impersonating the mortgagor named and described in the instrument to be the said mortgagor, and one claiming to be the agent of the mortgagor received upon the mortgage, from the mortgagee, a check payable to the mortgagor for the amount of the loan purporting to be secured, and obtained from the drawee bank the amount of said check on a forged indorsement of the name of. the payee on the back of the check, and absconded, the notary and the sureties on his official bond are not liable to the lender by reason of the negligence of the notary in taking and certifying the acknowledgment of a stranger without the proof required by the California statute, as the bank was not authorized to pay the check on the forged indorsement, and had no right to charge the amount paid against the drawer's account, so that the drawer has suffered no loss from the notary's negligence. Hatton v. Holmes, 97 Cal. 208, 31 Pac. 1131."

Many other cases may be found cited and digested in these notes. The question has been so thoroughly treated in these recent cases and notes thereto, until we deem it useless to further discuss the cases on the subject. Most, if not all, of the cases cited in brief of counsel are treated in these notes, and none of them hold to the contrary of our decision in this case.

The cases relied upon by appellee are not applicable here, because in those cases, where the plaintiffs were held to be entitled to recover, the plaintiffs were either parties to the instruments, to which the false certificates of acknowledgment were made, or they, through, by, or against such instruments, suffered direct loss in consequence of the false certificates. Diligent search has failed to find a single case where the plaintiff, related to or connected with the false certificate in no other way than this appellee is, was allowed to recover.

It is contended by appellee that the errors assigned are not so discussed separately as to justify or allow consideration on this appeal under the rules of this court. It is true that the brief does not discuss each assignment separately, as might be done; yet the questions raised by each assignment are so closely related one to the other that a discussion of any one is in a manner a discussion of the others. There is not, and never has been, any dispute about the facts of the case, and hence it was tried on an agreed statement of facts. The disputed questions were of law only, and the case was tried so as to raise and to test these questions, and we are of the opinion they were sufficiently raised and discussed on this appeal to call for our decision thereof.

It results that the judgment must be reversed, and one here rendered for the defendant.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.