(91 South. 324)

**FIRST NAT. BANK OF ANDALUSIA v. PEOPLE'S BANK OF RED LEVEL.**
(4 Div. 683.)

(Court of Appeals of Alabama. May 17, 1921. Rehearing Denied June 16, 1921.)

1. **Banks and banking** ⬰149—**Where payee's indorsement forged, bank paying liable to bank on which drawn.**

Where a bank paid a check on which the indorsement of the drawee was forged, it is liable to the bank on which the check was drawn, its negligence being the proximate cause of the loss, notwithstanding that the signature of the drawer of the check was a forgery, and undiscovered by drawee bank before 30 days.

On Rehearing.

2. **Banks and banking** ⬰148(2)—**Where check payable to named person, drawee bank must procure genuine indorsement.**

Generally, where a negotiable instrument is not payable to bearer, but to a named person, it is the duty of a drawee bank or any one who buys it to procure a genuine indorsement, and the fact that a forged indorsement is the name of a nonexisting person does not afford relief against a noncompliance.

Appeal from Circuit Court, Covington County; A. B. Foster, Judge.

Action by the People's Bank of Red Level against the First National Bank of Andal-usia in assumpsit. Judgment for the plaintiff, and defendant appeals. Affirmed.

Certiorari denied 91 South. 922.

Powell, Albritton & Albritton, of Andalusia, for appellant.

The court erred in the judgment rendered. Section 5017, Code 1907; 63 Ala. 519; 3 Burrows, 1354; Joyce, Commercial Paper, § 99; 7 C. J. 695; 21 Idaho, 258, 121 Pac. 544, 39 L. R. A. (N. S.) 1107, Ann. Cas. 1913D, 495; 110 Minn. 263, 125 N. W. 119, 26 L. R. A. (N. S.) 849, 136 Am. St. Rep. 496; 66 W. Va. 545, 66 S. E. 761, 36 L. R. A. (N. S.) 605; 2 Wall. 121, 17 L. Ed. 857; 72 Ala. 585; 79 Ala. 617; 79 Ala. 586; 46 N. Y. 77, 7 Am. Rep. 310; 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 890; 10 Wheat. 333, 6 L. Ed. 334.

A. R. Powell and Thigpen, Murphy & Jones, all of Andalusia, for appellee.

The court rendered the proper verdict and the only verdict it could have rendered. 202 Ala. 167, 79 South. 651; 203 Ala. 179, 82 South. 429; 7 C. J. 695; 110 Minn. 263, 125 N. W. 119, 26 L. R. A. (N. S.) 849, 136 Am. St. Rep 496; 159 Ky. 141, 166 S. W. 986, L. R. A. 1915A, 77.

BRICKEN, P. J. This is an action by appellee against appellant on the common counts. The case was tried by the court without a jury on the following agreed statement of facts:

One Albert Findley had an account on time deposit with the People's Bank of Red Level, Ala., on and prior to September 9, 1919, in a sum in excess of $550; that some one, who was not Albert Findley, called up the cashier of the People's Bank of Red Level, from River Falls, Ala., just prior to September 9, 1919, and represented himself as being Albert Findley, and told the cashier of the People's Bank of Red Level, Ala., that he was buying some land from his brother Thedford Findley, and asked the cashier if he would honor his check for $550, and the cashier of said the People's Bank of Red Level told the party, whom he presumed was Albert Findley, to draw on his time deposit for the amount of the land, and he would honor his check. That subsequent to this time, and on September 9, 1919, a party appeared at the cashier's window of the First National Bank of Andalusia, Ala., with a check for $550, purporting to be drawn by Albert Finley, and made payable to "Mr. Tedford Finley," which check, with the indorsements thereon, is attached to this agreement of facts and made a part thereof. That at the time of the transactions covered by this agreement, Albert Findley had a brother whose name was Thedford Findley. That this check was presented to D. L. O'Neal, assistant cashier of said the First National Bank of Andalusia, by said party, with the statement that his name was Tedford Finley; that Albert Finley was his brother; that the check presented by him had

---

⬰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

been drawn in his favor by said Albert Finley, and had been given him to pay for some land which he had sold Albert Finley.

Thereupon O'Neal asked him if he wanted the check cashed, and he replied that he did. O'Neal then told him that he did not know whether the check was good, and that he would forward it for collection. Thereupon the party told him to call the People's Bank of Red Level over the long distance phone at Red Level; that they knew about it up there; that the check was good; that they would tell him that it was all right, and he would pay for the message. The party further stated to O'Neal that he needed some of the money to pay some debts, and that he would leave the remainder of the money, $150, on deposit with the First National Bank. Thereupon O'Neal at once called up the People's Bank of Red Level, Ala.; R. H. Foshee, cashier of said bank, answered the phone, and O'Neal asked him if Albert Findley's check on the People's Bank of Red Level, in favor of Tedford Findley, for $550, was good. Foshee promptly answered that it was; that Albert Findley's check was all right. At the time the party representing himself to be Tedford Finley approached O'Neal, he had his right hand, including his thumb, tied up, and told O'Neal there was a bone felon on his thumb, and for that reason he could not write. Thereupon, O'Neal wrote Tedford Finley's name as it appears indorsed on the check, the party made his mark to the same, which was attested by O'Neal, who, at the time, noted on the check the memorandum as to the bone felon and the party being unable to write. O'Neal thereupon paid the party $400 on the check, and placed $150 to the credit of Tedford· Finley. The First National Bank of Andalusia promptly indorsed and forwarded the check to the First Bank of Red Level, Red Level, Ala., for collection, and the same was paid to said bank by the said People's Bank of Red Level on September 10, 1919, the cashier of plaintiff bank not detecting that the purported signatures of maker and payee were forgeries, and charged the same to Albert Findley's account, after which the proceeds were paid by said First Bank of Red Level to the First National Bank of Andalusia.

The party representing himself to be Tedford Findley paid for the phone message. At the time the check was presented to O'Neal the words "time deposit," written in red ink on the check, were not on it, but were written on said check by R. H. Foshee, cashier of the People's Bank of Red Level after, or when, it was paid by said bank to the First Bank of Red Level. Said check is on one of the regular printed forms of the People's Bank of Red Level furnished by it to its customers.

Andalusia and Red Level are both in Covington county, Ala., and about 12 miles apart. The entire transaction, with reference to the check, with the party representing himself to be Tedford Finley, was had with D. L. O'Neal, assistant cashier of the First National Bank of Andalusia, Ala. Said O'Neal did not know Albert Findley or Thedford Findley, or the party representing himself to be Tedford Findley, the brother of Albert Findley, and made no effort to ascertain the identity of any of the parties, other than is set forth in this agreement. ' Neither the First National Bank of An-

dalusia, nor any of its representatives, received any notice from the People's Bank of Red Level, or from any one else, that the check was not genuine, or that the indorsements and signatures were forgeries, until October 11, 1919, after the same was paid by the People's Bank of Red Level on September 10, 1919. As soon as the First National Bank of Andalusia learned the check was not genuine, it tendered to the People's Bank of Red Level the $150, which the party representing himself as Tedford Finley had left on deposit with it, and has always been ready, able, and willing to pay the same. Said tender was before suit was brought, and plaintiff waives payment into court.

That on October 10, 1919, Albert Findley came into the People's Bank of Red Level, and the cashier asked him about his land, and said Findley knew nothing about it, and the cashier of said bank immediately made investigation, and ascertained for the first time that the check was a forgery. That plaintiff credited back to the account of Albert Findley the said sum of $550 after it discovered that said check was a forgery, and on October 11, 1919, the day after said check had been discovered to be a forgery, said check was tendered to the defendant, and demand made for the $550 paid on said forged check, which defendant refused to pay, except the $150, which it now has on deposit. It was not the custom of the plaintiff bank to send out monthly statements to its customers, and none was sent to Albert Findley, and he never saw the check until October 10, 1919. That plaintiff bank never took any steps to find out whether the check was genuine prior to October 10, 1919.

It is further agreed by and between the parties to this suit that the signature of said check is not that of Albert Findley, and that the signature of Tedford Finley, on the back of said check, is not the signature of Thedford Findley, and that said check was not presented by nor indorsed by Thedford Findley, nor has Thedford Findley made any claim to the sum of $150 now on deposit with the First National Bank of Andalusia, but that said check was presented and indorsed by a party unknown to all the parties interested in this suit, and to both Albert Findley and Thedford Findley, and that said Albert Findley did not draw any check in said amount payable to Thedford Findley, and did not authorize or direct any one else to draw said check, and knew nothing of said check being drawn until after it had been paid and his attention called to it; that he did not know, and does not now know, who drew said check, and that Thedford Findley does not know who drew and indorsed said check, and did not authorize any one to indorse the said check in his name; that neither Albert Findley nor Thedford⁄ Findley, subsequent to the drawing of and indorsing of said check, ratified their purported signatures to and on said check.

At the time the check was paid by plaintiff on September 10, 1919, and for several months prior to that time, plaintiff had Albert Findley's signature as a depositor on file, and the card containing said signature is hereto attached and made a part of this agreement. For some time prior to September 9, 1919, and subsequent thereto, said Albert Findley had an active deposit account with said People's Bank of Red

Level, against which he drew checks occasionally.

The court rendered judgment for plaintiff for $550, the full amount claimed. From that judgment defendant prosecutes this appeal.

[1] The judgment of the trial court, in our opinion, was correct. Had the signature of the drawer of the check not been a forgery, appellant would have lost the money it paid to the impostor of the indorsement. The maker could have recovered it back from the appellant or appellee. Robertson Banking Co. v. Brasfield, 202 Ala. 167, 79 South. 651.

As to the failure to identify the forger and the forgery of the indorsement, appellee was without fault. The fault and liability as to this rest entirely upon appellant. Without this neglect or fault on the part of appellant, no loss would have come to appellant, appellee, or any other party.

This negligence or fault on the part of appellant was therefore the proximate cause of the loss. It would have suffered this loss had appellee discovered the forgery as to the maker or indorser and had refused payment on that account. Consequently appellee's negligence in failing to discover the forgery as to the maker, its depositor, did not proximately contribute to the loss. American Surety Co. v. First National Bank of Montgomery, 203 Ala. 179, 82 South. 429.

The two cases cited above—202 Ala. 167, 79 South. 651, and 203 Ala. 179, 82 South. 429—discuss or decide every question involved on this appeal, and fully justify and support the judgment of the trial court in this case. Appellant's right of action for its loss is against the forger and impostor, who deceived it and who received the benefit of the crime and fraud perpetrated.

Appellee had committed no wrong in representing to appellant that the alleged maker's check to his brother for $550 was or would be good. That statement was a fact, and, so far as appears, was made in perfectly good faith. To show the truth of the statement, a forged check, forged both as to the maker and forger, was paid by it. Appellee was of course guilty of negligence, and was at fault in paying the forged check, but this wrong by appellee resulted only in injury to the maker, its depositor, and not to appellant. Appellee has made good the loss to the only party who was injured by its negligence, and it is but justice and equity that appellant make good the loss suffered in consequence of its negligence, and then proceed against the party whose wrong caused it to suffer the loss. The fact that the party who defrauded appellant is unknown, or is insolvent, if known, cannot change or alter the law. This is not a case in which one of two innocent parties must suffer a loss on account of the wrong of the third; both parties here are guilty of a wrong, and each must meet the consequence or loss of his own wrong. Appellee has voluntarily made good the loss its wrong occasioned; and the judgment of the trial court has adjudged that appellant must make good the loss its wrong occasioned. The law allows and the courts are open for appellant to compel the person whose wrong occasioned its loss to make it good. Thus far the law and justice of the case have met; and it is to be hoped that the only intentional wrongdoer or criminal in the matter may yet be made to answer for his wrong, both civilly and criminally.

If the appellee had been at fault in causing or allowing the impostor to present the check to appellant either for sale or collection, there would then have been both justice and law in appellant's contention that it should not be required to pay back to the appellee the money it so received from the latter. Appellee, however, as to this matter was not at fault at all. In its conversation with the imposter over the telephone it acquired no knowledge or intimation that the maker or payee, much less an impostor, would present the particular forged check, or even a genuine, to appellant bank for either sale or collection.

Natural and probable consequence to be expected was that the payee or his legal assignee or indorser would present the check, if ever drawn, to appellee bank for payment. In the phone conversation between the two banks appellee was not requested by appellant to identify the payee or to identify the particular check, and it did not do so, or attempt so to do. It was only requested to answer whether or not Albert Findley's check on appellee bank in favor of Tedford Findley for $550 was good. Appellee answered it was good; that Albert Findley's check was all right. Every word of this answer was full, correct, and true so far as appellee knew or could know. Appellee at that time did not know, except as informed over the phone by appellant, that Albert Findley had drawn any check in favor of his brother or any other person, and did not attempt so to inform appellant. It was appellant's business and duty at that time to know whether or not Albert Findley had made that particular check, and that the person presenting it was the payee or the person authorized to indorse it or to receive payment. This appellant failed to do, and in consequence must suffer the loss as to all persons subsequently dealing with the check. Appellant by indorsement in writing guaranteed all prior indorsements, including that of the payee and forger. This of course is the law merchant upon the subject so declared by statutes in this state. The authorities relied upon by appellant are not apt in the case at hand. The agreed state-

ment of facts does not present a case which falls within the rules of law announced in those cases which are insisted upon by appellant. In fact most of the cases cited and relied upon by appellant fix liability on it when applied to the facts such as are presented by the records in this case. This is certainly true as to the cases of Pennington Bank v. First National Bank, 110 Minn. 263, 125 N. W. 119, 26 L. R. A. (N. S.) 849, 136 Am. St. Rep. 496; Williamson Bank v. McDowell Bank, 66 W. Va. 545, 66 S. E. 761, 36 L. R. A. (N. S.) 605; People's Bank v Franklin Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884; Farmers' National Bank v. Farmers' & Traders' Bank, 159 Ky. 141, 166 S. W. 986, L. R. A. 1915A, 77–83.

If appellant had merely forwarded the check to appellee for collection, then a very different rule of law would apply, and appellant might not then be liable to appellee. This, however, we do not decide because the question is not before us. It is to cases like this to which many, if not most all, of appellant's authorities apply. The distinction as to liability in actions between banks as to forged checks is discussed and the authorities cited in 7 Cor. Jur. 695 et seq. and notes.

It may be that if the delay of appellee in discovering the forgery or of notifying appellant thereof after discovery prevented appellant from recovering or making good its loss, that it would then have a right of action, or be able to recover against appellee; but there are no pleadings or proof in this case that would allow, much less justify, such action or defense. The proof shows without dispute that appellee did promptly notify appellant as soon as it discovered the forgery, and there is no proof to show that appellee could have recovered or recouped its loss of or from the impostor, if it had been notified the very day after appellee paid check. It is not necessary to now decide as to these questions, because no such questions were raised by the pleadings, or attempted to be shown by the proof.

It follows from what we have said above and the authorities cited that appellee was entitled to recover back from appellant the money so paid it under mistake and on account of the forgeries. It is entitled to recover whether the rules of law governing negotiable instruments be applied to the facts in the case; or whether the rules of equity under the doctrine ex æquo et bono be applied; or whether the rules of law governing and applying to negligence cases should control; that is, he must respond in damages whose negligence proximately caused the injury complained of.

There can be no doubt after an examination of the record in this case that, but for the negligence of appellant in failing to identify the payee and the impostor and of

18 Ala.App.—13

its indorsing the check expressly guaranteeing the indorsement of the payee and impostor, it would not and could not have suffered the loss it must sustain. Consequently it follows necessarily that appellant's loss and damages was proximately caused by its own negligence. While of course appellee was guilty of negligence in failing to detect the forgery of the name of its depositor, it conclusively follows that this negligence did not and could not have proximately caused the loss or damage to appellant. If appellee had discovered the forgery and had declined to pay, appellant would have been in no better condition than it is now, unless it could have discovered and proceeded against the impostor. As before stated, there is nothing to show that it could or would have discovered the impostor had the appellee declined to pay the check on account of the forgery. Appellee in law and in fact had a right to rely upon the indorsement of appellant which guaranteed the indorsement of the payee and impostor.

It results that we find no error in the record, and the judgment of the lower court must be affirmed.

Affirmed.

## On Rehearing.

The court has been furnished with several briefs in support of the application for rehearing, and some new questions have been presented on this argument which are not improper, if not necessary, for us to answer. While the case has been well and fully briefed by able counsel for appellant, we still adhere to the original opinion and decision.

It is insisted by counsel for appellant that appellant bank is not liable to appellee bank, for the reason that appellant bank acted in good faith; that there is nothing to show that appellant acted in bad faith. While it is true that the agreed statement of facts probably does not show bad faith of any one except the impostor, it shows no bad faith on the part of the appellee bank; but it does indisputably show negligence and failure to comply with the law on the part of both of the banks.

[2] The impostor is the man who profited by all the transactions shown by the admitted statement of facts. The question for decision in the trial court and this court is which of these two banks must suffer the loss of the amount which was gained thus by the impostor. It is not a question of bad faith on the part of either of the banks. It is a question of negligence and a failure to observe the law relative to the transactions in question, and whose negligence or failure to observe the law proximately contributed to the loss, or, in other words, that enabled the impostor to gain $400 by the transaction. It seems to the court that this

question is certainly and conclusively answered by saying and holding that the negligence or failure of the appellant bank to observe the law resulted in the impostor gaining and obtaining the $400; in other words, that the negligence or failure of the appellant bank to observe the law directly and proximately resulted in the impostor obtaining the $400. It is the undoubted commercial law of this state that as to a negotiable instrument, and especially a check like the one in question, if not payable to bearer, but to a named person, it is the duty of drawee bank, or any one who buys the same, to procure a genuine indorsement; and the fact that the forged indorsement is the name of a nonexisting person does not afford relief against a noncompliance with the plain legal duty.

It is shown by the agreed statement of facts in this case that the cashier of appellant bank did not know the party who presented the check for payment; did not know whether he was the payee or not; and did not require any identification of him; but paid the check upon the statement of said party that he was the payee named in the check, and wrote the name of the impostor, he making his cross mark only, and that the appellant indorsed the check expressly guaranteeing that indorsement. It is conceded or admitted that the person receiving the money was not the payee named in the check, and that the payee had authorized no one to indorse it for him, and consequently the appellant bank would be liable to the payee if the check had been genuine. In other words, the appellant bank would have to lose the money if the check had been genuine. It is certainly difficult to see how the appellant bank can profit or be saved from loss because the check was in fact a forgery. On the other hand, if the appellee bank had been guilty of no negligence and had discovered the forgery, still the appellant bank would have lost the $400. We are unable to see how in law, equity, or justice the fact that appellee bank was guilty of negligence in failing to discover that the check was a forgery could have the effect to restore to the appellant bank the $400 which it had already lost.

As stated in the original opinion, the only possible damages that could have resulted to the appellant was in the failure of appellee bank to promptly notify it of the forgery in order that it might have recovered the money back from the impostor. No such action, however, has been brought. No such action was presented to the trial court, and none has been presented to this court. There is neither claim nor evidence to show that if appellee bank had discovered the forgery as soon as the check was presented, and had then notified appellant bank it

could have then at that time recovered its money back from the impostor. We cannot see how the fact that the payee of this forged check was a *real* person and not a *fictitious* one can distinguish this case from the one of Robinson Banking Co. v. Brasfield, 202 Ala. 167, 79 South. 651. We cannot accede or consent to the argument of appellant which attempts to distinguish these two cases for the reason that the payee of one was *fictitious* and the payee of the other was *real*. It was paying without obtaining identification and a genuine indorsement which rendered the payee liable in each case.

The fact, if it be a fact, that the appellee bank informed appellant bank that Albert Findley's check was good, if drawn on his savings or time deposit, or that they did not so inform them, can make no difference. If the appellee bank is willing to pay Albert Findley's check for $550 drawn upon it, and it did pay such check, the account upon which it was drawn could make no difference in this case, and can in no wise help the position of the appellant bank.

Application overruled.