GOVERNOR EX REL. KADIN, Appellant, vs. BRISTOL and another, Respondents.

*September 15—October 11, 1938.*

For the appellant there was a brief by *Theodore Kramer* of Milwaukee, attorney, and *William E. Kaplan* of counsel, both of Milwaukee, and oral argument by *Mr. Kramer.*

For the respondents there was a brief by *Fellenz, Boreson & Worthing* of Fond du Lac, and oral argument by *K. E. Worthing.*

NELSON, J. The relator contends that the complaint states a good cause of action against the defendants and that the trial court erred in sustaining the demurrer. The allegations of the amended complaint, so far as they need be summarized or specifically recited, are as follows: The relator, George Kadin, is a jeweler, and resides in the city of Milwaukee. At all of the times mentioned in the complaint, the defendant, Alvin M. Bristol, was a duly appointed, qualified, and acting notary public residing at Oakfield, in this state. In qualifying for that office, the defendant, Bristol, filed with the secretary of state a bond in the sum of $500 signed by him as principal, and by the defendant, Ætna Casualty & Surety Company, as surety, conditioned that the defendant, Bristol, would faithfully discharge the duties of his said office. On or about April 22, 1936, the relator employed one Fred L. Miller to purchase old gold for him in certain parts of this state. It was necessary for the relator, from time to time, to advance moneys to the said Miller for such purposes. Before advancing moneys to the said Miller, the relator required him to furnish a bond in the sum of $500 for the protection of the relator against the former's defaults. A bond was furnished by the said Miller, signed by him as principal, and by his father, Frank Miller, and his mother, Ida Miller, as sureties. Thereafter the said Fred L. Miller defaulted to the extent of $500. The relator thereafter obtained a judgment for $561.90 against him and his sureties. A transcript of said judgment was, on March 8, 1937, filed in Fond du Lac county. Thereafter execution was issued and returned wholly unsatisfied. It is then specifically alleged in the complaint:

"Twelve: Relator further alleges that in supplemental proceedings held on the 16th day of June, 1937, before W. W. Hughes, court commissioner in and for Fond du Lac county, Wisconsin, the examination revealed that the said bond executed by the said Frank Miller was signed in blank;

that statements as to the defendant, Frank Miller's worth being ten thousand ($10,000) dollars were filled in by others after the said Frank Miller had left the premises.

"Thirteen: Relator further alleges that the examination in supplemental proceedings revealed that the said defendant Frank Miller was not worth the sum of ten thousand ($10,000) dollars over and above his debts and liabilities and property exempt from execution at the time of the execution of said bond; that in truth and in fact the said Frank Miller is insolvent and had no assets upon which a sum in the amount of five hundred ($500) dollars can be relied, and that such condition existed at the time that the said bond was executed.

"Fourteen: Relator further alleges upon information and belief that the said bond was improperly executed by the said Frank Miller as surety and that the cause of said improper execution was the negligence of the defendant, Alvin M. Bristol.

"Fifteen: That the relator relied upon the signed statement of the defendant, Frank Miller, as notaried by the defendant Alvin M. Bristol in making advances of money from time to time to the said Fred L. Miller.

"Sixteen: That the relator has exhausted his remedies against Frank Miller, Fred L. Miller and Ida Miller, the sureties on said bond.

"Seventeen: That as a result of the false certificate made by Alvin M. Bristol, the relator has suffered damages in the sum of $561.90 plus his subsequent costs and disbursements."

The complaint demands judgment against the defendants for the sum of $500, together with costs and the disbursements of the action.

The record returned contains no written decision of the trial court, but from the briefs it appears that the trial court was of the opinion that the complaint does not state a cause of action because upon its face it appears that the damages alleged to have been sustained by the relator were not proximately caused by any act or neglect of the defendant, Bris-

tol, while acting as a notary public. In *Governor ex rel. Mlekus v. Maryland Casualty Co.* 192 Wis. 472, 213 N. W. 287, it was held, in an action against a notary public on his bond, that no damages grounded on the negligence, fraud, or malfeasance of the notary may be recovered unless such damages are proximately caused by the negligence, fraud, or malfeasance of the notary. That case involved a fraudulent certificate of acknowledgment to a mortgage, and it was held by a divided court, under the facts and circumstances of that case, that the damages sustained by the plaintiff were not the proximate result of the false certificate. There was no dispute between the majority and the minority of the court as to the rule, that damages, in order to be recoverable in such cases, must be proximately caused by the negligence or fraud of the notary. The court divided on the question whether the false certificate was a proximate cause of the plaintiff's damages.

Where the damages sought to be recovered from a notary public are grounded upon the negligence of a notary, the rule is practically universal that in such an action it must be shown that the damages were proximately caused by the notary's negligence. *American Surety Co. v. First Nat. Bank* (1919), 203 Ala. 179, 82 So. 429; *Smith v. Maginnis* (1905), 75 Ark. 472, 89 S. W. 91; *Coffin v. Bruton* (1906), 78 Ark. 162, 95 S. W. 462; *Riverside Portland Cement Co. v. Maryland Casualty Co.* (1920) 46 Cal. App. 87, 189 Pac. 808; *Oakland Bank of Savings v. Murfey* (1886), 68 Cal. 455, 9 Pac. 843; *McAllister v. Clement* (1888), 75 Cal. 182, 16 Pac. 775; *Hatton v. Holmes* (1893), 97 Cal. 208, 31 Pac. 1131; *Mahoney v. Dixon* (1904), 31 Mont. 107, 77 Pac. 519; *Ellis v. Hale* (1920), 58 Mont. 181, 194 Pac. 155; *State Nat. Bank v. Mee* (1913), 39 Okla. 775, 136 Pac. 758; 49 L. R. A. (N. S.),

annotation p. 51; 18 A. L. R., annotation p. 1308; 51 A. L. R., annotation p. 1484.

The complaint, to say the least, does not contain "a plain and concise statement of the ultimate facts constituting" a cause of action. It recites what an examination in supplemental proceeding revealed, but does not plainly and concisely state the ultimate facts. Sec. 263.03 (2), Stats. But passing over this criticism of the complaint and giving to its allegations a liberal construction "with a view to substantial justice between the parties," sec. 263.27, Stats., we may say that it charges that the defendant, Bristol, while acting as a notary public, permitted the surety, Frank Miller, to sign the verified justification without requiring the said Miller, before signing, to fill in, or authorize the filling in, of the amount of his net worth over and above his legal exemptions, that the defendant, Bristol, was negligent in permitting Frank Miller to sign and swear to the justification when the amount of his net worth was left blank; that thereafter others (not the defendant, Bristol) filled in or inserted $10,000 in the justification, and that the relator relied upon the bond as delivered to him and thereafter advanced moneys to the said Fred L. Miller in reliance on said bond.

In our view, the complaint fails to state that the damages alleged to have been sustained by the relator were proximately caused by the negligence of the defendant, Bristol. It is alleged that others filled in the amount of the net worth of Frank Miller after he had left the premises. It is obvious that no damages could have been proximately caused by the neglect or failure of Bristol to have the instrument fully completed before signing the jurat. We think it clear that the proximate causes of the asserted damages were the acts of the others in filling in the justification and the delivery of said bond as altered to the relator by Fred L. Miller.

Whether the fact that Frank Miller was wholly insolvent at the time he signed as surety, as alleged in the complaint, renders the complaint demurrable, because the relator could not in any event have recovered anything from Frank Miller, we need not presently decide.

*By the Court.*—Order affirmed.